**Anthony SAPERITO, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 1083S360.

Supreme Court of Indiana.

March 25, 1986.

Susan K. Carpenter, Public Defender, June D. Oldham, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

Appellant Anthony Saperito was convicted after trial by jury of battery, a class C felony, Ind.Code § 35–42–2–1 (Burns 1985 Repl.). He was sentenced to 2 years imprisonment and his sentence was enhanced by 30 years upon a determination that he was an habitual offender. He raises the following issues in this direct appeal:

1. Whether he should have been discharged pursuant to Criminal Rule 4(B), the speedy trial rule;

2. Whether the evidence was sufficient to convict him of battery;

3. Whether the trial court erred in overruling his motion for mistrial after a witness referred to his having been in prison;

4. Whether the court erred in admitting a letter written by Saperito to a defense witness; and,

5. Whether his motion for a mistrial should have been granted after juror misconduct was revealed.

We affirm.

### I. Speedy Trial

Saperito claims he should have been discharged under Indiana Rules of Procedure, Criminal Rule 4(B)(1), which reads in part:

> If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act. . . .

As the rule provides, any delay brought about by the defendant's own motion is not considered in the computation of the total delay. Furthermore, after a trial date is delayed for a reason attributable to the defendant, he must refile for a speedy trial

in order to retain his rights under the rule. *Parks v. State* (1979), 270 Ind. 689, 389 N.E.2d 286.

Saperito was arrested on May 18, 1982, and moved for speedy trial on June 28. The court granted the motion and set trial for September 1, 1982, within the 70-day limit from the date of the motion.

■ Before trial, however, on August 10, Saperito moved for a continuance. The court ordered the cause continued "until further notice". Saperito did not file a new motion for speedy trial, and trial date was not re-set until February 16, 1983. The cause was tried on April 20, 1983.

After Saperito's motion for speedy trial was granted and a trial was set pursuant to the rule, all delay was occasioned by his own motion. Because Saperito did not renew his request for speedy trial, he was not entitled to be discharged under the rule.

## II. Sufficiency of the Evidence

Appellant, 59 years old, and the complaining witness, Oliver Clark, 74 years old, lived in opposite sides of a duplex. They were never on friendly terms, and a confrontation between them on their porch led to Saperito's prosecution for battery.

The evidence which tends to support the trial court's judgment of conviction are these. Appellant had accused Clark of abusing Clark's dog. Appellant met Clark on the porch and began shouting at him about his treatment of the dog. According to Clark, Saperito hit him in the eye, spinning him around and off the porch. Clark suffered head and eye contusions and both his wrists were broken in the fall.

The friend who took Clark to the hospital testified that Clark told her Saperito had beat him up. Marion Lentine, landlord of the duplex, testified appellant told her he had "settled the situation of Ollie's (Clark's) dog by giving Ollie what Ollie had given the dog all the time".

In a statement to police, appellant said he "may have shoved" Clark but that he had not hit him. Both appellant and his witness, Dodd, said Clark was intoxicated and staggering. Dodd claimed he saw Clark approach the house through a back gate just before the confrontation and that Clark fell by the gate. He said he had lain down on the sofa just before Saperito started talking to Clark, so he did not witness the incident, but he said appellant could not possibly have hit Clark because he was talking through the door. He said Saperito came back in and said, "That old man fell again".

Marion Lentine testified on rebuttal that Dodd told her after Saperito had been arrested that Saperito had sent him a letter from jail about the incident and that from the letter and from talking to appellant he "would know what he was to say in court because he had no knowledge of this happening." The letter was admitted into evidence. It read:

Hi Jim!

Jim if you do not go to court for me, I'll not have a chance.

That fellow lied and you know it. I'm facing 2–8 and 30 for the bitch. So you will have to go to court for me. I'm also going to have Marian there so she can prove I've been complaining about him, also that she has had trouble before I was there.

Jim this is what you're going to have to say. That he has been teasing that dog of his and that he had been beating it and that I had called Sam two days before. Now this is the most important thing to say. That we were watching T.V. and had the doors open and you heard this guy coming up the walk and told me he was and that he looked like he was drinking because he was not walking too steady. Then I went out and yelled at him about the way he was treating (sic) and that I was (sic) my finger in his face, he then put down the bag he was carrying and started to argue with me about his dog. He then took a step back lost his footing, turned and fell *face* down, and I did not hit him or push him. Now this last part is the whole thing you did not see me touch him because everything rides on that point, no matter what

I said about pushing to Marian or the cops. I told the cops at the station that I did not push him and that I could prove it by you.

Now Jim everything is up to you otherwise I'm lost. When you tell the court this you cannot be unsure you have to be positive and outspoken like you are sure of your facts.

Maybe Marian can talk to this damn guy. I'm counting on you Jim, if you do it this way it's his word against us and I think the court would go along, especially after Marian tells them he was trouble with other tenants.

Tell Marian to mail the money but it has to be a money order.

Your Buddy, Tony

Saperito would have us judge the credibility of the complaining witness, Clark. He claims Clark was intoxicated and that he simply fell off the porch. Appellant urges our consideration of the fact that Clark first told police he and Saperito had "quite a tussle" on the porch before he fell, whereas his trial testimony indicated he was accosted by appellant and did not have a chance to defend himself.

■ Of course, we will not reweigh the evidence and the witnesses' credibility. *Loyd v. State* (1980), 272 Ind. 404, 398 N.E.2d 1260. The evidence most favorable to the State—even Clark's version alone— sufficed to prove beyond a reasonable doubt that Saperito committed the crime of battery. *Moore v. State* (1970), 254 Ind. 23, 256 N.E.2d 907.

### III. Admission of Letter

Appellant claims the trial court erred in admitting during State's rebuttal the letter he wrote to Dodd outlining Dodd's testimony. He argues the letter is subject to "twelve, possibly fourteen different interpretations", that it required his explanation, and that, therefore, its admission severely undermined his right to remain silent, which he nonetheless exercised.

■ Clearly, Saperito's letter did considerable damage to his defense, but that has never in itself been grounds for excluding otherwise relevant evidence. Neither does the possibility of various interpretations render evidence inadmissible. It was the jury's function to infer and interpret, and, in any case, we see fewer possibilities for interpretation than appellant does. The court did not err in allowing admission of the letter in rebuttal of Dodd's testimony about the incident. *See, Smith v. State* (1983), Ind., 455 N.E.2d 346.

Before the letter was submitted to the jury, the court deleted the sentence in which Saperito told Dodd he was facing 3–8 plus 30 years in prison. Saperito now argues that, once admitted, the entire letter should have been shown to the jury.

Saperito cites what he calls the "completeness doctrine" which provides that when a conversation or transaction is put into evidence by one party, the other party may call for the entire conversation or transaction to be introduced. *Brown v. State* (1915), 184 Ind. 254, 108 N.E. 861. *Smith v. State* (1980), Ind.App., 400 N.E.2d 1137. He points out that the reason for the rule is to avoid "the danger of . . . wresting a part of . . . a body of expressions out of its context." *McCormick on Evidence* (3d Ed.1984), § 57, 145.

■ There was no danger present here of confusing or distorting the meaning of the letter by eliminating the reference to the possible sentence. Saperito claims the sentence would have shown that his situation was so serious he needed to review with Dodd what was to be Dodd's truthful testimony. We believe it is equally supportive of the conclusion that Saperito was desperate enough to manufacture testimony for Dodd.

Besides, evidence offered under appellant's "completeness doctrine" is subject to general rules of admissibility. *McCormick on Evidence, id.* Generally, comments on sentencing are not admissible to the jury. *Smith v. State* (1982), Ind., 432 N.E.2d 1363. The possibility of prejudice resulting from the statement far outweighed its relevance to the rest of the letter.

## IV. Witness' Reference to Prison

Appellant claims he should have been granted a mistrial when witness Marion Lentine referred to his having been in prison. She had been asked by defense counsel on cross-examination, "Was he welcome in Santino's as a patron? He really didn't create any trouble for you, did he?" She replied, "He hadn't since he came back from prison the last time". Counsel objected, and his subsequent motion for mistrial was denied.

■ Evidence of unrelated criminal activity is inadmissible on the question of guilt. *Brown v. State* (1984), Ind., 459 N.E.2d 376. But where evidence of criminal activity *is* revealed, the error does not necessarily result in reversal. *See, English v. State* (1985), Ind., 485 N.E.2d 93. The burden is on appellant to show he was placed in grave peril when his motion for mistrial was denied, *Blood v. State* (1980), 272 Ind. 417, 398 N.E.2d 671, and we can conclude only that he was not.

We have held the evidence was sufficient to convict Saperito. Of course, the test for harmless error is not whether the evidence was sufficient without the offending testimony, but whether testimony might have had a substantial influence on the verdict. *White v. State* (1971), 257 Ind. 64, 272 N.E.2d 312. In light of the victim's testimony, the photographs of his injuries, Saperito's statement to Marion and to the police, and the damage done to his credibility and Dodd's by virtue of the letter, we conclude the error was harmless beyond a reasonable doubt. *Chapman v. California* (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.

## V. Juror Misconduct

At the outset of the habitual offender proceedings, appellant moved for a mistrial when it was revealed that a juror had visited the scene of the incident. An alternate juror reported to the court that one jury member had gone to the duplex and had measured the doors. He claimed the juror told the jury during deliberations that he looked in the back where Dodd had said he saw Clark fall and there was so much foliage that no one could have walked through there. The allegation was that this juror repeatedly mentioned his observations throughout deliberations.

The court held a thorough hearing on the matter. The errant juror testified that he often drives in that neighborhood because his parents have an apartment there. He said he never left the car. The juror testified that he told the jury only that a diagram of the scene which had been drawn on the blackboard during trial was accurate and that the trees were "pretty grown up" in the back.

■ We agree that appellant was denied his right to confrontation when the juror injected evidence into deliberations which was not in the record. *Dyer v. State* (1976), 168 Ind.App. 278, 342 N.E.2d 671. However, not all constitutional error amounts to reversible error. *Id.* The decision whether jury contact with outside information should result in reversal turns on the "special facts" of the case. *Grigsby v. State* (1978), 267 Ind. 465, 371 N.E.2d 384.

Here, the entire jury was polled, and each member stated that the information did not affect his verdict in any way. Some of the information was merely cumulative of other evidence, such as the diagram and the photographs of the scene. The statement about the overgrowth in the back was subject to the jurors' knowledge that a great deal of time had elapsed since the incident. Also, the information did not go to a material element of the crime or of the defense, only to Dodd's credibility which was critically undermined by the letter from Saperito.

The totality of the circumstances of Saperito's trial persuade us that the juror's information was not influential enough to have affected appellant's rights or to have subjected him to substantial peril. *Grigsby, supra.* The error was harmless beyond a reasonable doubt. *Chapman v. California, supra,* 386 U.S. 18, 87 S.Ct. 824.

The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER, PIVARNIK, and DICKSON, JJ., concur.