Ronald Dale EVANS, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 73S02–9411–CR–1117.

Supreme Court of Indiana.

Nov. 23, 1994.

Jerry J. Lux, Lux & Barrett, P.A., Warren R. Good, Robison, Apsley & Good, Shelbyville, for appellant.

Pamela Carter, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

ON PETITION TO TRANSFER

SHEPARD, Chief Justice.

A jury found appellant Ronald Evans guilty of possessing cocaine with the intent to deliver and maintaining a common nuisance. The Court of Appeals reversed both convictions. We grant transfer to affirm the conviction for dealing cocaine.

### Facts

The evidence most favorable to the judgment show that on July 10, 1992, Robert Decker called Evans to purchase some cocaine. Evans, who lived in Shelbyville, explained that he would have to go to Indianapolis to buy the cocaine. Decker offered to accompany him, and the two drove to Indianapolis in Evans' small pick-up truck. Once in the city, Evans purchased the cocaine and sold a portion to Decker, who then injected himself with the drug using a syringe he had brought with him. On the way back to Shelbyville, Evans stopped by the side of the road so that Decker could urinate. Decker also disposed of the syringe before returning to the vehicle.

Unbeknownst to Evans and Decker, law enforcement officers from Shelbyville had received a tip that Evans was selling cocaine, and they were tracking his movements. The police arrested both Evans and Decker as they were returning to Shelbyville. The police found two baggies of cocaine on Decker's person and one on the floor of Evans' truck on the passenger's side. They did not find any cocaine on Evans at the time of arrest.

Based on their surveillance of Evans and a statement given by Decker, the prosecutor charged Evans with possession of cocaine with intent to deliver, Ind.Code Ann. § 35–48–4–1(a)(2)(C) (West Supp.1994), and maintaining a common nuisance, Ind.Code Ann. § 35–48–4–13(b) (West Supp.1994). A jury found Evans guilty of both crimes. The Court of Appeals, however, reversed the convictions. *Evans v. State* (1994), Ind.App., 627 N.E.2d 832. The court held that the prosecution had deliberately solicited inadmissible testimony in order to prejudice the jury against Evans and ordered a new trial. *Id.* at 833–34. The court further held that the evidence was insufficient to support the conviction for maintaining a common nuisance. *Id.* at 834. We summarily affirm this latter decision. Ind.Appellate Rule 11(B)(3).

### I. The Alleged Evidentiary Harpoon

We first address Evans' claim that the prosecution deployed an "evidentiary harpoon." An evidentiary harpoon occurs when the prosecution places inadmissible evidence before the jury for the deliberate purpose of prejudicing the jurors against the defendant. *Moffatt v. State* (1989), Ind., 542 N.E.2d 971; *White v. State* (1971), 257 Ind. 64, 272 N.E.2d 312. Thus, to prevail on such a claim of error, the defendant must show that (1) the prosecution acted deliberately to prejudice the jury and (2) the evidence was inadmissible. While the trial court agreed

with Evans that the evidence was inadmissible, it held that the testimony in question did not constitute a harpoon. We agree with Judge Rucker's dissent in the Court of Appeals, *Evans*, 627 N.E.2d at 834, that the evidence was admissible and that there was therefore no evidentiary harpoon. Defense counsel's motion for mistrial was properly denied.

To prove that Evans possessed cocaine, the prosecution relied primarily on Decker's testimony. It also solicited testimony from Larry Coleman, a Shelby County Jail officer, who testified that during a strip search of Evans he discovered "a baggie with white powder residue" in the defendant's shirt pocket.

The defense objected to Coleman's testimony and moved for a mistrial, claiming that any inference about Evans' possession of cocaine drawn from Coleman's testimony concerning the baggie would be unwarranted. The defense pointed out, and the prosecution admitted, that the State could neither produce the baggie nor demonstrate that the substance was in fact cocaine. In response, the prosecution explained that Coleman was prepared to testify further that the baggie he found on Evans was similar to the baggies found in Evans' vehicle. The prosecution argued that the jury should be permitted to determine the extent to which Coleman's testimony supported the contention that Evans possessed the cocaine. The trial court sustained the defense's objection, and so instructed the jury, but denied the motion for mistrial.

■ Absent some particular prohibition, evidence that is material and relevant should go to the jury. Trial courts are vested, however, with the discretion to exclude relevant evidence where its probative value is substantially outweighed by the threat of unfair prejudice to the defendant.[1] *Chittenden v. State* (1982), Ind., 436 N.E.2d 86. In applying this standard, courts must first determine the probative value of the evidence, including the proponent's need for that evidence. Second, courts must determine the likely prejudicial impact of the evidence. In particular, courts will look for the dangers that the jury will substantially overestimate the value of the evidence or that the evidence will arouse or inflame the passions or sympathies of the jury. *See Stone v. State* (1989), Ind.App., 536 N.E.2d 534; *see also Cook v. Hoppin*, 783 F.2d 684 (7th Cir.1986). Finally, courts must weigh the probative value against the danger of unfair prejudice and will exclude relevant evidence only where the threat of prejudice substantially outweighs its probative value.

■ In this case, if the jury believed Coleman's testimony that Evans had the baggie in his possession, they might have reasonably inferred in the context of the State's case that the white powdery residue in that baggie was cocaine. This, of course, would have been important corroboration of Decker's testimony.

As for potential unfair prejudice, Coleman's testimony was not likely to stir the emotions of the jurors, but it is troublesome that the State lost or discarded the baggie and failed to test the white residue. While these failures do raise the possibility that the jury might have overestimated the value of this testimony, we conclude that the jury was capable of discounting the value of the evidence in light of the possibility that it was manufactured by the jailor after the fact or that the white substance was not cocaine.

We conclude that the value of the evidence was not substantially outweighed by the danger of unfair prejudice. The trial court could well have denied the motion to strike the testimony. The court exercised good caution in granting the motion and admonishing the jury, but the testimony of the jailer hardly placed Evans in a position of grave peril, and the court properly denied the request for a mistrial.

## II. Admission of the Syringe

■ Evans claims that the trial court abused its discretion in admitting a syringe found on the road between Indianapolis and

1. This case was tried before adoption of the Indiana Rules of Evidence. We will rely on the rules of evidence at the time of trial.

Shelbyville. The syringe was allegedly used by Decker to inject himself with cocaine on the way back from Indianapolis and then abandoned near an overpass on I–74. Recovered four months after the incident, the syringe was not unique, and Evans argues that Decker could have planted the syringe to substantiate his story. This threat of fabrication, counsel contends, required exclusion of the syringe. Counsel also claims that the prejudicial impact of the syringe substantially outweighed its probative value. We disagree and uphold the trial court's admission of the instrument.

First, real evidence is admissible where (1) a witness is able to testify that the exhibit is "like" the item associated with the crime, and (2) there is a showing that the exhibit is connected to the defendant and the commission of the crime. *Andrews v. State* (1989), Ind., 532 N.E.2d 1159, 1162–63. The proponent of the evidence is not required to conclusively identify the item, and the lack of positive identification goes to the weight of the evidence, not its admissibility. *Oglesby v. State* (1987), Ind., 513 N.E.2d 638 (upholding admission of crowbar found six weeks after robbery), *cert. denied,* 485 U.S. 1037, 108 S.Ct. 1600, 99 L.Ed.2d 914 (1988).

In this case, Decker testified that the syringe offered into evidence at trial was like the one he had used to inject himself with cocaine and abandoned by the overpass. The syringe was connected to the defendant and the crimes charged not only by the fact that the police found the syringe at the described location but further by the observations of Officer Carney, who testified that he saw Evans and Decker stop at that overpass. While fabrication was a possibility, the defense was free to raise this question in the minds of the jurors on cross-examination, leaving them to discount the evidence according to their own perceptions of this threat.

Second, where the prejudicial nature of relevant evidence is slight, trial courts enjoy wide latitude in determining its admissibility. *E.g., Hunter v. State* (1991), Ind., 578 N.E.2d 353. Here, the syringe was not likely to lead the jury to decide the case on improper grounds, and the State rightly introduced the evidence to support Decker's claim that he

was the user, not the dealer, in the transaction. The trial court did not abuse its discretion in admitting the syringe.

### III. Admission of Decker's Prior Statements

Appellant claims that the trial court erred when it admitted a transcript of Decker's statement to the police after his arrest and his deposition taken by the defense. On cross-examination, defense counsel read portions of Decker's deposition and statement to the police, highlighting certain inconsistencies between those statements and his trial testimony. The defense also insinuated that Decker was testifying against Evans only in order to receive a reduced bond and a favorable plea agreement.

On redirect, the State attempted to introduce a transcript of the interrogation and the deposition to clarify the nature of the inconsistencies. The defense argued, however, that portions of those documents were prejudicial and, therefore, inadmissible. The court ordered certain segments of the documents redacted. When the State reintroduced Decker's statement to the police, the defense objected that it was an inadmissible prior statement and contained a prejudicial reference to an extrinsic offense. The court overruled the objection and admitted the evidence. We conclude that the trial court acted within its discretion in admitting the transcript and the deposition.

Both Decker's statement to the police and his deposition were admissible under the doctrine of completeness. According to this doctrine, a party may place the remainder of a statement or document before the jury after the opposing party has introduced a portion of that statement or document into evidence. *See, e.g., McElroy v. State* (1990), Ind., 553 N.E.2d 835. This rule prevents one party from misleading the jury by presenting statements out of context. The remainder of the statement or document is subject to the general rules of admissibility, however, and any portions found immaterial, irrelevant, or prejudicial must be redacted. *See Saperito v. State* (1986), Ind., 490 N.E.2d 274.

In this case, the defense cross-examined Decker on the details of his story, pointing up various inconsistencies among his statement to the police, his deposition, and his trial testimony. The defense showed, for instance, that Decker told the police he first called Evans at around 10 p.m. but testified at trial that the call was made at 8:30 p.m. Decker's account of the number of calls placed to Evans also changed. The defense further pointed out that Decker stated in his deposition that someone drove him to Evans' house that night, whereas Decker testified he had actually driven himself on a suspended license in his employer's truck. It also surfaced during Decker's deposition that he had lied to police when he denied having paid Evans for the cocaine prior to the transaction in Indianapolis.

■ While it is often the job of defense counsel to attack the credibility of a witness in this way, the jury must be permitted to determine for itself the extent of the inconsistencies in context. As we explained in *Mayhew v. State* (1989), Ind., 537 N.E.2d 1188, once a party attacks the credibility of a witness on the grounds of prior inconsistent statements, the door is open for the opposing party to introduce the prior statements "in order that the jury might weigh [the] accusation of inconsistency and the degree thereof." *Id.* at 1191; *see also McElroy*, 553 N.E.2d at 839–40. This is especially true where, as in this case, the alleged inconsistencies go to details, and most of the statements are otherwise substantially similar. *Cf. United States v. Harris*, 761 F.2d 394 (7th Cir.1985) (applying Fed.R.Evid. 106).

■ Decker's statement to the police was also admissible as a prior consistent statement offered to rebut charges of an improper motive. Where a party impeaches a witness using portions of a prior statement that is in certain respects inconsistent with the witness's testimony at trial *and* implies that the witness has an improper motive in testifying, Federal Evidence Rule 801(d)(1)(B), which we adopted in *Modesitt v. State* (1991), Ind., 578 N.E.2d 649, overlaps with the doctrine of completeness. The opposing party may put the inconsistencies in context for the jury by introducing the remainder of the statement under the doctrine of completeness and may introduce the same prior statement as generally consistent with the witness's testimony under Rule 801(d)(1)(B) in order to rebut the charge of recent fabrication or improper motive or influence. *See United States v. Tarantino*, 846 F.2d 1384 (D.C.Cir.1988), *cert. denied*, 488 U.S. 840, 109 S.Ct. 108, 102 L.Ed.2d 83 *and cert. denied*, 488 U.S. 867, 109 S.Ct. 174, 102 L.Ed.2d 143 (1988); *see also United States v. Stuart*, 718 F.2d 931 (9th Cir.1983) (holding that defendant "opened the door" to prior consistent statement by using portions of that statement on cross-examination).

■ The completeness doctrine and Rule 801(d)(1)(B), however, remain distinct evidentiary categories. The completeness doctrine may apply without any implication that a witness has recently fabricated his or her story or has an improper motive. Its purpose is to provide context for otherwise isolated comments when fairness requires it. Rule 801(d)(1)(B), on the other hand, may be triggered with or without the introduction of a prior statement. It is triggered by a charge of recent fabrication or improper motive, such as an allegation, express or implied, that the witness is testifying in order to receive leniency from the government for his or her own misdeeds. *See United States v. Montague*, 958 F.2d 1094 (D.C.Cir.1992) (cross-examination on plea agreement triggers Rule 801(d)(1)(B)); *Stuart*, 718 F.2d at 934–35 (same); *see also United States v. Allen*, 579 F.2d 531 (9th Cir.), *cert. denied*, 439 U.S. 933, 99 S.Ct. 326, 58 L.Ed.2d 329 (1978).

That said, it remains to apply Rule 801(d)(1)(B) to the present case. In adopting this rule, we said that "a prior statement is admissible as substantive evidence only if the declarant testifies at trial and is subject to cross-examination concerning the statement, and the statement is ... consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive...." *Modesitt*, 578 N.E.2d at 654.

In its opening statement and on cross-examination, the defense implied that the State had enticed Decker to testify with the promise of a favorable plea agreement and a reduced bond. Given that Decker testified at trial and was subject to cross-examination, this charge of an improper motive was sufficient to permit the State to introduce a prior consistent statement. *See United States v. Monzon*, 869 F.2d 338 (7th Cir.) (admitting prior consistent statement where defense insinuated that witness fabricated testimony to gain favor of government), *cert. denied*, 490 U.S. 1075, 109 S.Ct. 2087, 104 L.Ed.2d 650 (1989). Moreover, Decker's statement to the police was substantially consistent with his trial testimony. Both Decker and defense counsel agreed that the statements were "very similar." R. at 248.

■■ The remaining question is whether Decker's statement served to rebut the defense's charge of an improper motive. The majority of the federal circuit courts have held that the declarant must have made the prior consistent statement before the alleged improper motive arose. *See United States v. Davis*, 890 F.2d 1373, 1379 (7th Cir.1989) (citing *Monzon*, 869 F.2d at 342–43), *cert. denied*, 493 U.S. 1092, 110 S.Ct. 1165, 107 L.Ed.2d 1068 (1990); *United States v. Henderson*, 717 F.2d 135 (4th Cir.1983), *cert. denied*, 465 U.S. 1009, 104 S.Ct. 1006, 79 L.Ed.2d 238 (1984); *Stuart*, 718 F.2d at 934–35 (9th Cir.1983); *see also United States v. Vest*, 842 F.2d 1319 (1st Cir.), *cert. denied*, 488 U.S. 965, 109 S.Ct. 489, 102 L.Ed.2d 526 (1988); *United States v. Bowman*, 798 F.2d 333 (8th Cir.1986), *cert. denied*, 479 U.S. 1043, 107 S.Ct. 906, 93 L.Ed.2d 856 (1987); *United States v. Quinto*, 582 F.2d 224 (2d Cir.1978). This requirement, though not expressly stated in Rule 801(d)(1)(B), comports with its logic. Where a witness is accused of having an improper motive for testifying, evidence that the witness said the same thing out-of-court with the same improper motivation has little probative value and should not be admitted.[2] We adopt this approach.

Decker's statement to the police came before he reached a plea agreement with the State and so satisfies all of the requirements for admission under Rule 801(d)(1)(B). We note that because Decker was deposed after he had made his deal with the State, his deposition fails this prong of the test and was admissible only under the doctrine of completeness.

■■ Finally, Evans claims that even if the transcript of Decker's interrogation was admissible under the doctrine of completeness and Rule 801(d)(1)(B), a prejudicial portion of that statement was not redacted. At the end of Decker's interrogation, an officer asked Decker if there was anything else he could remember that might prove helpful to their investigation. Decker responded by naming the person that he thought might have given Evans the money to buy the cocaine. He explained that he had heard their names mentioned together in the past.

Evans is correct that evidence of an extrinsic offense is generally inadmissible in order to protect defendants from juries that might otherwise convict them on the basis of their poor characters, not proof beyond a reasonable doubt that they committed a crime. *See Gibbs v. State* (1989), Ind., 538 N.E.2d 937. Evans also properly relies on the rule that inadmissible statements must be redacted from such admissions. *See, e.g., Saperito*, 490 N.E.2d 274; *cf. Johnston v. State* (1988), Ind., 517 N.E.2d 397. We conclude, howev-

---

**2.** The Fifth, Eleventh, and District of Columbia Circuits have taken a different approach to applying Rule 801(d)(1)(B). They will admit prior statements made after the alleged improper motive arose, leaving the trial judges to determine the probative value of the statements as a factual matter. *See United States v. Montague*, 958 F.2d 1094, 1099 (D.C.Cir.1992) ("The fact that a prior consistent statement was made after the appearance of a motive to fabricate does not render it *per se* outside the terms of Rule 801(d)(1)(B)."); *United States v. Pendas–Martinez*, 845 F.2d 938, 942 n. 6 (11th Cir.1988) ("the consistent statement need not have been made prior to the time that the alleged motive to fabricate arose"); *United States v. Parry*, 649 F.2d 292, 296 (5th Cir.1981) ("[W]e [have] permitted a party to introduce evidence of a prior statement even though the statement was made after the motive for fabrication had arisen."). We decline to follow this path, noting that Indiana Evidence Rule 801(d)(1)(B), which will govern in the future, expressly requires the prior consistent statement to have been made "before the motive to fabricate arose."

er, that the trial court did not abuse its discretion in admitting this veiled allusion to a third party who may or may not have been involved in a drug transaction that may or may not have been related to the purchase and sale of cocaine at issue here. Decker's statements are simply too cryptic and vague to constitute a reference to an extrinsic offense.

## IV. Rebuttal Evidence

Evans contends the court erred by allowing the State to call Hazel Carter and Donna Cowen (Evans' sister) as rebuttal witnesses. He argues that their testimony constituted solely direct evidence. Examination of the record reveals that at least portions of their testimony responded to evidence introduced by Evans in defense, and we cannot say that the trial court abused its discretion by permitting it into evidence. *See Heck v. State* (1990), Ind., 552 N.E.2d 446.

## V. Prosecutorial Misconduct

The prosecutor called one May Johnson as a witness. During direct examination, he asked her whether she knew Belinda Roberts. Defense counsel objected on the grounds that there was "no evidence or anything at this particular point to connect Belinda Roberts to any transaction that occurred on the night of July 10 or 11...." R. at 669. The prosecutor responded by saying that the defense had discussed Roberts' role during opening argument. Indeed, Roberts was on the defense list of witnesses and the defense called Roberts later as a witness. "[T]hey are tied to what they say in opening statement," said the prosecutor. R. at 669–70. This provoked a debate about the burden of proof and a request for a mistrial, all a tempest in a teapot. The trial court sustained the objection to the question and denied the mistrial. The court was within its discretion to deny the motion. *Gregory v. State* (1989), Ind., 540 N.E.2d 585.

## Conclusion

We affirm the conviction for possession of cocaine and reverse the conviction for maintaining a common nuisance.

GIVAN and SULLIVAN, JJ., concur.

DeBRULER, J., concurs and dissents with separate opinion in which DICKSON, J., joins.

DeBRULER, Justice, dissenting and concurring.

The success of the State's case against appellant, that he possessed cocaine with the intent to deliver it, depended upon whether the jury would believe the testimony of Robert Decker. The police knew that appellant was driving his pickup truck and that Decker was seated next to him. The police knew that Decker was a drug user, that he had part of the drugs on his person, and that the remainder of the drugs was on the floor on the side of the truck where Decker sat. The police knew that appellant was aware that the drugs were present in the truck. The police did not know who possessed the drugs and intended to deliver them. The police had no case against appellant for possession with intent to deliver without the testimony of Decker that the drugs belonged to appellant, and Decker was a weak witness. It is within this framework that the inadmissibility of Jailer Coleman's testimony becomes clear. He testified:

> Uh, I came back in and processed his strip search. Uh, upon strip searching him, I found, uh, in the right front pocket uh, a baggie with white powder residue.

The danger of unfair prejudice is twofold. First, it caused the jury to visualize appellant as he was stripped in the jail, and in so emphasizing the specific nature of this process aroused the jurors' emotions against appellant. It demeaned and degraded him. In placing the phrase "baggie with white powder residue" in the mouth of the policeman, it encouraged the jury to improperly infer that the police were of the opinion that the white powder residue was contraband cocaine and that in fact the bag had contained contraband cocaine. The actual bag was lost by the police before trial and the contents of it had not been chemically analyzed. This testimony had only minimal relevance, but gave a large, undue advantage to the prosecution. It provided the lone corroboration for Decker's story that it was appel-

lant who possessed the cocaine with the intent to deliver it. The testimony was inadmissible and the trial court correctly sustained appellant's objection to it. *Kiefer v. State* (1958), 239 Ind. 103, 153 N.E.2d 899.

"[W]hen it is apparent that the 'sole purpose of calling the witness was to wield the *evidential harpoon,* deliberately calculated by counsel to prejudice the jury against the defendant and his defense,' an admonishment cannot cure the error and a mistrial should be declared." *Pillow v. State* (1985), Ind., 479 N.E.2d 1301, 1306 (quoting *White v. State* (1971), 257 Ind. 64, 76, 272 N.E.2d 312, 319) (emphasis in original). The testimony of Jailer Coleman is such a harpoon. And appellant succumbed to it. I meant what I said in *Pillow,* agree with the Court of Appeals in this case, and would reverse appellant's conviction for possession of cocaine with intent to deliver, and remand that charge for a new trial. I would also reverse the nuisance conviction, and order acquittal on that charge on remand.

DICKSON, J., concurs.