**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

**FILED**

Jun 28 2013, 7:09 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DAVID M. PAYNE**
Ryan & Payne
Marion, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

BRANDON SHANE FITCH,              )
                                  )
    Appellant-Defendant,          )
                                  )
        vs.               )      No. 27A05-1209-CR-481
                                  )
STATE OF INDIANA,                 )
                                  )
    Appellee-Plaintiff.           )

APPEAL FROM THE GRANT SUPERIOR COURT
The Honorable Dana J. Kenworthy, Judge
Cause No. 27D02-1108-FC-240

**June 28, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Brandon Shane Fitch ("Fitch") appeals from his convictions of five counts of child molesting,[1] each as a Class C felony, contending that the trial court erred by refusing to admit the video of his interrogation by the police and his testimony about the interrogation, and by failing to find that the State engaged in prosecutorial misconduct.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In 2011, D.W. ("Father") lived in Grant County with his wife ("Mother") and four children, including two daughters, A.A.W., who was eleven years old, and A.W., who was ten years old at the time. A.W. was diagnosed with epilepsy and attended special needs classes at her school. Approximately five years previously, Father met and became friends with Fitch. In late 2010, Fitch was visiting Father's home when he stated that he had nowhere to live. Fitch stated that none of his family would allow him to stay with them. Father offered to let Fitch stay with his family for a few months, and Fitch accepted Father's offer.

On the afternoon of August 27, 2011, Father and Mother left their home for an appointment. Father asked Fitch to supervise A.W. and A.A.W., and Fitch remained in the home alone with A.W. and A.A.W. While their parents were gone, A.W. and A.A.W. were supposed to do chores, with A.W. given the responsibility of cleaning the bathroom.

Once Father and Mother left, Fitch exposed his genitals to A.W. and A.A.W. A.W. then began cleaning the bathroom, kneeling on her knees to scrub the floor. Fitch walked

---

[1] *See* Ind. Code § 35-42-4-3(b).

2

into the bathroom and squeezed A.W.'s buttocks. Fitch shut the bathroom door, but A.A.W. walked over to and opened the door. A.A.W. told Fitch that the door did not need to be shut. A.A.W. then returned to her chores, but kept an eye on Fitch and A.W. Fitch ordered A.W. to grab his penis, but A.W. refused. Fitch then pulled his penis out of his pants, grabbed A.W.'s hand, and forced A.W. to touch his penis. Fitch then began moving A.W.'s hand up and down on his penis. A.W. tried to pull away from Fitch, but he did not allow her to do so. Fitch continued to move A.W.'s hand up and down on his penis until he ejaculated. Fitch told A.W. to leave the bathroom. A.A.W., who had seen Fitch close to A.W. while he moved his hand up and down, told Fitch that he was "going to jail." *Tr.* at 132.

When Father and Mother returned home at approximately 6:15 p.m. A.A.W. ran up to the vehicle and told her parents what she had seen. Mother talked with A.W. and A.A.W. and called the police. That same day, Kelly Scott ("Scott") of the local department of child services, interviewed A.W. and A.A.W. at the child advocacy center. A.W. disclosed other incidents of child molestation to Scott. A.W. stated that on another occasion, Fitch had squeezed her buttocks when she was sleeping. On another occasion, A.W. was in her brother's bedroom, when Fitch pulled her pants down and rubbed A.W.'s vagina for approximately a minute. On another occasion, Fitch attempted to kiss A.W.

On August 30, 2011, the State charged Fitch with five counts of child molesting, each as a Class C felony. At the conclusion of his jury trial, Fitch was found guilty as charged and was sentenced to an aggregate sentence of twelve years, with eight years executed and four years suspended to probation. Fitch now appeals. Additional facts will be supplied as

necessary.

## DISCUSSION AND DECISION

Fitch argues that the trial court abused its discretion by refusing to admit an audio-video recording of his interrogation by police officers, and by striking Fitch's testimony concerning the police interrogation.

> The standard of review for admissibility of evidence issues is whether the trial court's decision resulted in an abuse of its discretion. The decision whether to admit evidence will not be reversed absent a showing of manifest abuse of a trial court's discretion resulting in the denial of a fair trial. Generally, errors in the admission or exclusion of evidence are to be disregarded as harmless unless they affect the substantial rights of a party. In determining whether an evidentiary ruling affected a party's substantial rights, the court assesses the probable impact of the evidence on the trier of fact.

*Bell v. State*, 820 N.E.2d 1279, 1281 (Ind. Ct. App. 2005)(internal citations omitted).

On direct-examination, Fitch sought to introduce the audio-video recording of his interrogation by police in which he denied the acts of molestation. The trial court refused Fitch's request to admit the recording on several bases involving analysis of the hearsay rule.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind. Evid. Rule 801(c). A statement is not hearsay, however, if it is a statement by a party-opponent. Evid. Rule 801(d)(2). Nor is a statement hearsay if it is a statement consistent with the declarant's testimony at trial, that is offered to rebut an express or implied charge of recent fabrication, and was made before the motive to fabricate arose. Evid. Rule 801(d)(1). The statement is not hearsay if it is a prior inconsistent statement of the declarant who testifies at the trial, and the prior statement was made under oath subject to the penalty of perjury. *Id*.

4

The trial court explained that the evidence was inadmissible hearsay because Fitch was offering his own statement denying he had committed the offenses. Thus, it was not a statement by a party opponent. *See Taylor v. State*, 710 N.E.2d 921, 923 n.2 (Ind. 1999) (statements by defendant were not admissible as statements of a party opponent because they were offered by the defendant). Fitch maintained his innocence during the interrogation and at trial. Thus, it was not a prior inconsistent statement. Furthermore, at the time of Fitch's interrogation, a motive to fabricate would have already formed. Thus, it was not a prior consistent statement. The trial court correctly observed that "[e]ssentially, defendant is offering the video to bolster his testimony here at trial." *Tr.*at 276. "Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." Evid. Rule 704(b). The trial court did not abuse its discretion.

Fitch's argument that the trial court abused its discretion by excluding relevant evidence because the recording of the interrogation was admissible as a police investigative report is unpersuasive. Fitch cites to no authority to support his contention that the recording was a police investigative report. Further, Indiana Evidence Rule 803(8) provides for the admissibility of public records and reports, stating that "[u]nless the sources of information or other circumstances indicate lack of trustworthiness. . .investigative reports by police and other law enforcement personnel . . .[are hearsay exceptions]] when offered by an accused in a criminal case." As previously mentioned, Fitch's motive to fabricate existed at the time of his interrogation, if not before, thereby rendering the source of the information

5

untrustworthy. The trial court did not abuse its discretion by excluding from evidence an out-of-court statement, Fitch's interrogation, offered to prove the truth of the matter asserted.

Fitch also contends that the trial court abused its discretion by granting the State's motion to strike Fitch's testimony on direct examination about statements he made during his interrogation. The trial court correctly refused to admit the recording of the interrogation because it was inadmissible hearsay. He argues that the evidence that Fitch steadfastly and repeatedly maintained his innocence during the interrogation should have been considered by the jury in assessing his credibility and weighing the evidence. He posits that admission of the statements for that purpose is analogous to the jury's consideration of flight as evidence of guilt. *See Dill v. State*, 741 N.E.2d 1230, 1233 (Ind. 2001) (flight and related conduct may be considered by jury in determining defendant's guilt). Fitch's statements are not analogous to flight because the statements are not conduct and flight is not hearsay. Fitch had the opportunity to argue that his conduct implied innocence as flight implies guilt. Fitch was not allowed to support that argument through the admission of hearsay. The trial court did not abuse its discretion.[2]

Fitch further argues that the trial court abused its discretion by finding that the State did not engage in prosecutorial misconduct. When reviewing a claim of prosecutorial misconduct, we must first consider whether the prosecutor engaged in misconduct. *Williams*

---

[2] Fitch argues that the trial court abused its discretion by striking, at the State's request, Fitch's earlier testimony about his statements contending that the State had waived the opportunity to object to the testimony. We disagree. The trial court deferred ruling on the admissibility of the recording until after Fitch's testimony about the interrogation. Once the trial court announced its ruling on admissibility, the State moved to strike that testimony, and the motion was granted. Thus, waiver is not at issue here.

6

*v. State*, 724 N.E.2d 1070, 1080 (Ind. 2000). We then consider whether the alleged misconduct placed the defendant in a position of grave peril to which she should not have been subjected. *Id*. "Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct." *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006). "The gravity of the peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct." *Id*.

In the present case, the alleged prosecutorial misconduct occurred to during the State's cross-examination of Fitch. Indiana Evidence Rule 611 states that "[c]ross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination." A trial court's rulings on the limitations of the scope of cross-examination will be reversed only for an abuse of discretion. *Braswell v. State*, 550 N.E.2d 1280, 1282 (Ind. 1990). To show an abuse of discretion by the judge in controlling the scope of cross-examination, a defendant must show how he was prejudiced by the trial court's actions. *Id*.

On direct examination, Fitch was asked and he answered as follows:

Q: You read the charges in this case?

A: Yes, I have.

Q: Are you guilty of these charges?

A: No, I am not.

7

*Tr.* at 278-79.

The following excerpt from the record contains the challenged cross-examination and responses at issue:

Q:    But you said that you did know that [A.W.] didn't have good grades?

A:    Yeah, I knew that she didn't get the goodest [sic] grades, I do know that.

Q:    Is that why she's the one you picked?

A:    What do you mean by that?

Q:    She's the one the you [sic] started out attempting to kiss, then it progressed to touching her butt, then it progressed to touching her vagina. . . .

A:    Allegedly.

Q:    And then made her jack you off.

A:    So you're saying I did do it, is that what you're saying? You're not saying allegedly, you're saying I did do it.

      DEFENSE COUNSEL: He's assuming an ultimate fact for the jury to decide, Judge. I'll ask that he rephrase the question to illicit [sic] a proper response.

      PROSECUTOR: I just asked him if that's why he picked her.

      TRIAL COURT: It's a fair question. You can answer the question sir.

A:    I, I'm not a cho-mo[3] man, I didn't do that.

Q:    I'm just asking.

A:    I didn't do that.

---

[3]    "Cho-mo" is prison slang for "child molester." *See* Urban Dictionary, http://www.urbandictionary.com/define.php?term=chomo (last viewed May 23, 2013).

*Tr.* at 309-310.

Assuming without deciding that Fitch's objection should have been sustained, Fitch has not shown any harm. Fitch specifically denied targeting A.W. because of her learning disability. The State's questioning of Fitch, if erroneous, was harmless.

Furthermore, the State's questioning did not constitute an evidentiary harpoon. "An evidentiary harpoon occurs when the prosecution places inadmissible evidence before the jury for the deliberate purpose of prejudicing the jurors against the defendant." *Evans v. State*, 643 N.E.2d 877, 879 (Ind. 1994). In order to prevail on this theory, the defendant must show that the prosecution acted deliberately to prejudice the jury through the use of inadmissible evidence. *Id*. at 879-80. Here, it appears that the State vigorously cross-examined Fitch about the alleged offenses and Fitch maintained his innocence as he had done on direct examination. We find no error here.

To the extent Fitch appears to argue that there is insufficient evidence to support his convictions, we disagree. Although this argument is arguably waived, we address it because it supports our conclusion that Fitch suffered no harm during his cross-examination, as the evidence against him was strong.

Our standard of reviewing claims of sufficiency of the evidence is well settled. When reviewing the sufficiency of the evidence, we consider only the probative evidence and reasonable inferences supporting the verdict. *Mork v. State*, 912 N.E.2d 408, 411 (Ind. Ct. App. 2009) (citing *Drane v. State*, 867 N.E.2d 144, 146 (Ind.2007)). We do not reweigh the evidence or assess witness credibility. *Id*. We consider conflicting evidence most favorably

9

to the trial court's ruling. *Id.* We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.* A conviction may be based upon circumstantial evidence alone. *Bockler v. State*, 908 N.E.2d 342, 346 (Ind. Ct. App. 2009).

Here, A.W. testified to each of the offenses with which Fitch was charged. "A conviction of child molesting may rest solely on the uncorroborated testimony of the alleged victim. *Link v. State*, 648 N.E.2d 709, 713 (Ind. Ct. App. 1995). In addition, A.A.W. corroborated A.W.'s testimony. Fitch does not contend that A.W.'s testimony is incredibly dubious. If he did so, the argument would fail because of the corroborating testimony and evidence. Under the "incredible dubiosity rule," this court may impinge upon the jury's responsibility to judge the credibility of witnesses when confronted with inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony. *Lawson v. State*, 966 N.E.2d 1273, 1281 (Ind. Ct. App. 2012). Fitch's argument is a request for this court to reweigh the evidence, a task we will not undertake. *Mork*, 912 N.E.2d at 411.

Affirmed.

VAIDIK, J. and PYLE, J., concur.