## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jun 30 2016, 5:59 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Anthony C. Lawrence
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jerome D. Seward,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

June 30, 2016

Court of Appeals Case No.
33A01-1510-CR-1754

Appeal from the Henry Circuit Court

The Honorable Mary G. Willis, Judge

Trial Court Cause No.
33C01-1501-F1-1

**Baker, Judge.**

[1] Jerome Seward appeals his convictions for Rape, a Level 1 Felony;[1] Criminal Confinement, a Level 3 Felony;[2] and Battery, a Level 6 Felony.[3] He argues that the trial court should have declared a mistrial after the victim, on cross-examination, referred to his previous time in jail. Finding no error, we affirm.

## Facts

[2] In December 2014, Seward and M.W. lived together in Henry County with M.W.'s five children, one of whom is Seward's biological daughter. Their relationship began in 2009 and was off and on, due partly to a period Seward spent in jail.

[3] On December 30, 2014, M.W. came home from work around 9:00 p.m. She and Seward drank beers, played cards, and talked. During the conversation, Seward gave M.W. a "one-time pass to be honest with him" about anything she might have done during their separation. Tr. p. 32-33. She told him that she had slept with a man Seward knew.

[4] Seward became enraged, and pushed M.W.'s chair back against the refrigerator. He began punching her in the face, and when she fell out of the chair, he jerked her up and down by her hair and stomped on her. Seward grabbed a large kitchen knife. M.W. tried to run out the back door, but Seward caught her and

---

[1] Ind. Code § 35-42-4-1(a)(1), (b)(2).

[2] I.C. § 35-42-3-3(a), (b)(2)(A).

[3] I.C. § 35-42-2-1(b)(1), (d)(1).

threw her back inside. Around this time, one of the children came downstairs and witnessed the assault, but Seward told him to go back upstairs.

[5] Seward picked up the knife and ordered M.W. to go upstairs. When they reached the bedroom, Seward anally raped M.W. In total, M.W. estimated that the beating and the rape lasted three and a half hours.

[6] M.W. spent the next day in bed. Her eye was swollen shut and she could not move her neck. She did not leave the house for the next three days because she did not want anyone to see her face. She returned to work on January 3, and, despite the three-day recovery, her coworkers could tell something had happened. A manager told her to go to the hospital. On January 5, she went to a sexual assault clinic. The Nurse Examiner later testified that the bruising she observed corroborated M.W.'s account of the anal rape. She also testified that the physical evidence was consistent with a three-and-a-half-hour beating and rape.

[7] On January 6, 2015, the State charged Seward with rape, a Level 1 Felony; criminal confinement, a Level 3 Felony; and battery, a Level 6 Felony. Prior to trial, Seward filed several motions in limine, one of which sought to exclude any evidence of his prior misconduct. The trial court granted this motion, which included an instruction for the State to explain this limitation to its witnesses.

[8] A jury trial was held on August 17-18, 2015. During Seward's cross-examination of M.W., he asked her why she did not initially go to the hospital.

She responded that she was afraid of losing her children because Seward was violent and had just been released from jail. Seward stopped her answer, but did not object. Seward then asked her when she had been in a relationship with the other man. She answered that she was in a relationship with the other man while Seward was in jail. This time, Seward moved to strike the testimony. The trial court granted the motion, explaining that "[t]he jury is to disregard that volunteered statement of the witness which was unresponsive to the question." Tr. p. 105. Seward also moved for a mistrial, which the trial court denied.

[9] Following the trial, the jury found Seward guilty as charged. After a September 22, 2015, sentencing hearing, the trial court sentenced Seward to thirty-five years for the rape, twelve years for the criminal confinement, and two years for the battery, with all terms to run concurrently. Seward now appeals.

# Discussion and Decision

[10] Seward has one argument on appeal, namely, that the trial court should have declared a mistrial after M.W. referenced his jail time. He argues that the trial court's admonishment to the jury was insufficient because it failed to specify which part of the statement the jury was to disregard.

[11] A mistrial is an extreme remedy that is warranted only when less severe remedies will not satisfactorily correct the error. *Randolph v. State*, 755 N.E.2d 572, 575 (Ind. 2001). A timely and accurate admonishment is presumed to cure any error in the admission of evidence. *Id.* The decision to grant or deny a

motion for a mistrial lies within the discretion of the trial court. *Id.* To prevail, the appellant must establish that he was placed in a position of grave peril to which he should not have been subjected. *Id.*

[12] Seward also argues that the mention of jail amounted to an "evidentiary harpoon." An evidentiary harpoon occurs when the prosecution places inadmissible evidence before the jury for the deliberate purpose of prejudicing the jury against the defendant. *Evans v. State*, 643 N.E.2d 877, 879 (Ind. 1994).

[13] Seward's argument is unavailing. The two brief mentions of jail time do not come anywhere close to necessitating the extreme remedy of a mistrial.

[14] First, this testimony was provided by a witness, not the prosecution. To be sure, Seward has cited a line of cases in which witnesses, rather than the prosecution, have produced an evidentiary harpoon. *See, e.g., Perez v. State*, 728 N.E.2d 234, 237 n.7 (Ind. Ct. App. 2000) (where police officer witness volunteers inadmissible evidence regarding prior convictions, "[w]e do not place distinguishing significance upon the fact that the deliberate act was that of the police officer witness rather than of the prosecution itself"). But all of the cases cited involve police officers who were experienced with the trial process. *E.g, id.* at 237 ("Detective Toney, who has undoubtedly testified for the prosecution in many cases, understood the significance of his statements to the jury").

[15] Second, the evidence regarding Seward's previous jail time was not volunteered; it was a direct response to a question asked by the defense. The

testimony to which Seward objected was produced when the defense asked M.W. when she was in a relationship with the other man, and she responded that it was during Seward's incarceration. We cannot say that this was testimony volunteered out of the blue; M.W.'s answer was a perfectly reasonable way to respond. Insofar as the defense elicited this testimony, and insofar as this testimony violated the motion in limine, it was invited error, which is not reversible. *Dumas v. State*, 803 N.E.2d 1113, 1121 (Ind. 2004).

[16] We also find that any error was cured by the trial court's admonishment. Seward's argument that the admonishment was so vague "that [it] was the equivalent of no admonish [sic] at all" is unpersuasive. Appellant's Br. p. 15. The admonishment was given directly after the statement in question. The jury surely knew that it was to disregard the statement it had just heard. Seward seems to suggest that the trial court was obligated to repeat the statement to the jury in order to direct their attention to the portion it was to disregard. If anything, this approach would have been worse for Seward because the jury would have heard the statement twice instead of once.

[17] Insofar as M.W.'s statement was responsive to Seward's cross-examination, it was invited error. And insofar as M.W.'s statement was unresponsive to Seward's cross-examination, the trial court's admonishment to disregard the statement "which was unresponsive to the question," tr. p. 105, cured any error.

[18]    The judgment of the trial court is affirmed.

May, J., and Brown, J., concur.