UNITED STATES of America,
Plaintiff-Appellee,

v.

Kathleen Gayle STUART,
Defendant-Appellant.

No. 82–1437.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 7, 1983.

Decided Oct. 18, 1983.

---

Harriet Leva Beegun, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Jay L. Lichtman, Los Angeles, Cal., for defendant-appellant.

Before BROWNING, CHOY and FER-GUSON, Circuit Judges.

CHOY, Circuit Judge:

A jury found Kathleen Gayle Stuart guilty of conspiring to misapply, and misapplying, funds of a savings and loan institution, and of making false entries in the records of a savings and loan association. On appeal, Stuart contends that the district court erred in (1) denying her motion for judgment of acquittal on the misapplication count, (2) denying her access to psychiatric reports made on a key government witness, and (3) admitting a prior consistent statement of a key government witness in the absence of a charge of recent fabrication. Because none of these arguments has merit, we affirm.

I. *Facts*

In July of 1980, Kathleen Stuart and John Van de Water discussed the possibility of illegally withdrawing funds from Gibraltar Savings and Loan Association ("Gibraltar"). Shortly thereafter, Van de Water obtained a position at Gibraltar's Laguna Hills branch, and Stuart obtained a position at Gibraltar's Santa Monica branch for the purpose of facilitating an illegal inter-branch withdrawal of funds from a Gibraltar "jumbo account," an account with a balance in excess of $100,000. Van de Water used the computer terminal at the bank to locate various jumbo accounts and targeted an account located in the Laguna branch belonging to one Roper. A $40,000 withdrawal from the Roper account through the Santa Monica branch was planned. The money was to be used in the preparation of a cashier's check which, in turn, was to be used to purchase gold coins.

On August 14, 1980, Van de Water drove to the Rare Coin Galleries in a Mercedes rented by Stuart the day before. He appeared at the shop disguised and talked with the store owner about making a $40,000 purchase of coins with a cashier's check. Later that day, Van de Water appeared at Gibraltar's Santa Monica branch and obtained from Stuart a $40,000 cashier's check made payable to Rare Coin Galleries. Van de Water then drove to Rare Coin Galleries to purchase the gold coins. He gave a shop employee the $40,000 check, but the employee telephoned Gibraltar and was unable to verify the check. Van de Water then left the shop, after showing his driver's license and leaving the check behind. The check was subsequently dishonored by Gibraltar. No currency ever left either the Roper account or Gibraltar.

On May 13, 1982, a three-count indictment was filed charging Stuart with one count of conspiring to misapply funds of a savings and loan association (18 U.S.C. § 371), one count of misapplying funds of a savings and loan association (18 U.S.C. § 657), and one count of making false entries in the records of a savings and loan association (18 U.S.C. § 1006). Van de Water entered into a plea agreement with the Government by which he agreed to

plead guilty to one count of aiding and abetting Stuart's misapplication and to testify truthfully at Stuart's trial.

Prior to trial, Stuart filed a motion before the district court seeking a court-ordered psychiatric examination of Van de Water to determine (1) whether Van de Water possessed a bias or prejudice against Stuart due to his mental state and (2) whether Van de Water's mental state precluded him from testifying truthfully at trial. This motion was granted. Stuart also filed a motion seeking discovery of all psychiatric studies ever conducted of Van de Water. The district court filed *in camera* various psychiatric reports but declined to make them available to Stuart.

At trial, Stuart proposed to call as a witness an FBI agent who interviewed Van de Water on the day after his arrest. The purpose of calling the agent was to impeach the testimony given by Van de Water during the Government's case in chief by introducing through the agent's testimony an alleged prior inconsistent statement made by Van de Water during his interview. However, Stuart also requested the district court to preclude the Government from eliciting on cross-examination of the agent various prior consistent statements by Van de Water to the agent during the interview. The district court ruled that, in the event defense counsel called the agent and questioned him regarding an alleged prior inconsistent statement made to the agent by Van de Water during the interview, the Government would be permitted to question the agent regarding prior consistent statements made by Van de Water during the same interview.

On June 29, 1982, the jury returned a verdict of guilty on all three counts. Stuart was sentenced to 5 years probation and 500 hours of community service. The sentences imposed as to all three counts were to run concurrently.

## II. *Discussion*

### A. *Sufficiency of Evidence—Misapplication*

■ Stuart claims that the district court erred in denying her motion for judgment of acquittal on the misapplication count, filed pursuant to Fed.R.Crim.P. 29(a). Rule 29(a) requires a trial court to grant a motion for judgment of acquittal "if the evidence is insufficient to sustain a conviction." The evidence was insufficient to sustain her conviction, Stuart contends, because her conduct did not result in an "actual disbursement of money" from Gibraltar. Thus, the sole issue here is whether, as Stuart claims, actual disbursement of money is a necessary element under 18 U.S.C. § 657.

> Section 657, 18 U.S.C., states in part:
> Whoever, being an officer, agent or employee of ... any ... savings and loan corporation or association ... *willfully misapplies* any money, funds, credits, securities or other things of value belonging to such institution ... shall be fined ... or imprisoned ... or both.

(Emphasis added.) The statutory language makes reference to wilful misapplication; it does not say that there must be an actual disbursement of money before conviction can be had under section 657. Stuart insists, however, that the requirement of actual disbursement of money must be read into the statutory language because the requirement is "present in the cases addressing the misapplication issue," citing *United States v. Dreitzler,* 577 F.2d 539 (9th Cir. 1978), *cert. denied,* 440 U.S. 921, 99 S.Ct. 1246, 59 L.Ed.2d 473 (1979); *United States v. Kennedy,* 564 F.2d 1329 (9th Cir.1977), *cert. denied,* 435 U.S. 944, 98 S.Ct. 1526, 55 L.Ed.2d 541 (1978); *Hargreaves v. United States,* 75 F.2d 68 (9th Cir.), *cert. denied,* 295 U.S. 759, 55 S.Ct. 920, 79 L.Ed. 1701 (1935). Yet the authorities Stuart relies on merely deal with the misapplication issue where the factual element of disbursement is present; none categorically states that a conviction under 18 U.S.C. § 657 cannot be sustained unless there is a showing of an actual disbursement of money. To the contrary, other circuits that have interpreted the same statutory provision state that an actual disbursement of money is not a pre-

requisite for conviction. *See, e.g., United States v. Farrell,* 609 F.2d 816, 819 (5th Cir.1980) ("[T]he mere approval of the loans at [the defendant's] instigation was a misapplication. The statute does not require that cash actually leave the bank before a violation occurs."); *United States v. Rickert,* 459 F.2d 352, 354 (5th Cir.1972) (government need not show "that cash actually leave the bank" or "that the bank suffer any actual loss of cash money"). *Cf. Golden v. United States,* 318 F.2d 357, 361 (1st Cir.1963) ("permanent loss to the Bank is not an element" of the violation and "subsequent restoration of the funds has no bearing on the offense"). We agree and hold that actual disbursement of money is not required under section 657.

■ The evidence produced at Stuart's trial revealed that (1) Stuart intentionally withdrew $40,000 from Roper's account in Gibraltar's Laguna Hills branch without proper authorization; (2) Stuart used the funds withdrawn from Roper's account to prepare a cashier's check; and (3) Stuart gave the cashier's check to Van de Water who attempted to use the check to purchase gold coins. Under the circumstances, the district court did not err in denying Stuart's motion for judgment of acquittal. *See United States v. Figueroa-Paz,* 468 F.2d 1055, 1058 (9th Cir.1972) (denial of motion for judgment of acquittal proper if, viewing the evidence in the light most favorable to the Government, the jury could reasonably find the defendant guilty beyond a reasonable doubt).

### B. Denial of Access to Psychiatric Reports on Van de Water

■ Stuart also claims that the district court's denial of her access to psychiatric reports on Van de Water violated her sixth amendment right to confrontation. We see no merit to Stuart's conclusory allegation here. Disclosure of the psychiatric reports on Van de Water was sought to "demonstrate the witness' propensity for untruthfulness." Yet the record reveals an abundance of other material that was allowed to be introduced at the trial for the purpose of impeaching Van de Water. Specifically, the jury was inundated with evidence that Van de Water had been convicted of a prior similar felony, had used a false name, had embezzled thousands of dollars from another lending institution, had filed a fictitious application for an American Express card, and had been promised that the Government would not prosecute him regarding two other instances of embezzlement. The jury also heard testimony that Van de Water was manipulative, dishonest, untrustworthy, and physically violent. Our examination of the psychiatric reports on Van de Water reveals nothing that would affect the credibility of the witness more than the material described above. Accordingly, the district court's evidentiary ruling with respect to the psychiatric reports, even if erroneous, may be deemed harmless under the facts of this case.

### C. Introduction of Prior Consistent Statements

At the trial, Stuart elicited from an FBI agent on direct examination a prior inconsistent statement Van de Water had made to the agent during an interview to the effect that he did not take any money from Coast Federal Savings. The Government then elicited from the agent some prior consistent statements Van de Water had made during the same interview implicating Stuart in the crime involving Gibraltar. On appeal, Stuart contends that the introduction of prior consistent statements was improper simply because there was no charge of recent fabrication. Stuart's argument here is again unmeritorious.

■ Rule 801(d)(1)(B), Fed.R.Evid., permits introduction of prior consistent statements that are offered to rebut a charge of improper influence or motive, as well as of recent fabrication. The record in this case reveals that, prior to the agent's testimony, Stuart had vigorously cross-examined Van de Water regarding his plea agreement with the Government, thereby calling into question Van de Water's motive in testifying. Therefore, the introduction of prior consistent statements made prior to the

plea agreement was proper. *United States v. Allen,* 579 F.2d 531, 532–33 (9th Cir.1978) (prior consistent statements of a declarant made to an agent may be elicited from the agent under Rule 801(d)(1)(B) where defendant had sharply attacked the credibility of the declarant and implied that the declarant was testifying out of a motive to avoid criminal prosecution).

■ The statements the Government elicited from the agent were also properly admitted because Stuart "opened the door." *See, e.g., United States v. Rinn,* 586 F.2d 113, 119–20 (9th Cir.1978) (where defendant opens up the subject matter of a declarant's prior statement to a law enforcement officer for the purpose of impeaching the declarant's credibility, Rule 801(d)(1) permits the Government to cross-examine the law enforcement officer with respect to other statements made by the declarant at the time); *United States v. Parr-Pla,* 549 F.2d 660, 663 (9th Cir.) (defendant "opened the door to admission of the full conversation by asking" witness on direct examination "whether a declarant had made a particular statement in the course of the conversation"), *cert. denied,* 431 U.S. 972, 97 S.Ct. 2935, 53 L.Ed.2d 1069 (1977).

The judgment of the district court is AFFIRMED.