**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert Smyth WALES, aka Larry Abbott, aka Robert Sanders,**
**Defendant–Appellant.**

**No. 91–10500.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 21, 1992.

Decided Oct. 20, 1992.

Benedict P. Kuehne, Sonnett, Sale & Kuehne, Miami, Fla., for defendant-appellant.

Stuart L. Gassner, Asst. U.S. Atty., Honolulu, Hawaii, for plaintiff-appellee.

Before KOZINSKI and THOMPSON, Circuit Judges, and RHOADES, District Judge.[*]

DAVID R. THOMPSON, Circuit Judge:

Robert Smyth Wales entered the United States at Honolulu International Airport on a flight which he boarded in Singapore. He checked the "no" box on a customs

* Hon. John S. Rhoades, United States District Judge for the Southern District of California, sitting by designation.

declaration form to deny that he was carrying more than $10,000. Customs agents found he was carrying $48,000. He was arrested and charged with knowingly and willfully making a false statement on a customs declaration form he gave to an officer of the United States Customs Service, in violation of 18 U.S.C. § 1001.

A jury found him guilty. The district court sentenced him to 14 months imprisonment, followed by supervised release for 2½ years, a fine of $15,000 and a special assessment of $50. The sentence was imposed under Sentencing Guideline § 2S1.3(a)(1)(B) (1990), which has since been amended. *See* U.S.S.G.App. C, amendment 379 (1991).

On appeal, Wales contends the evidence was insufficient to support his conviction and the district court erred in several evidentiary rulings. He also challenges his sentence, contending that he is entitled to be resentenced under the amendment to U.S.S.G. § 2S1.3(a)(1)(B).

We have jurisdiction under 28 U.S.C. § 1291. We affirm Wales's conviction, but remand to the district court for reconsideration of his sentence.

## DISCUSSION

### A. Sufficiency of the Evidence

■ In reviewing a jury verdict for sufficiency of the evidence, "the relevant question is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979).

The $48,000 in U.S. currency Wales was carrying was almost five times the $10,000 limit for disclosure purposes. The money was packaged in three separate envelopes, each from the hotel in Singapore that Wales had left that morning. Two of the envelopes were packed in different parts of Wales's luggage. The third he carried in the breast pocket of his jacket.

When he filled out his customs declaration form, Wales completed it accurately in full, except only for checking the "no" box in response to the printed statement: "I am carrying currency or monetary instruments over $10,000 U.S. or foreign currency." He accurately recorded, however, his flight number, the number and value of several gifts in his luggage and the date, even though he had just crossed the international date line.

When the customs inspector asked Wales what was in the first envelope found in his suitcase, Wales answered "my money." When the inspector opened the envelope and saw that it did indeed contain money, he asked Wales how much money there was. Wales shrugged his shoulders. The inspector then pointed to the declaration form and told Wales that if he was carrying more than $10,000, he had to declare it on the form. Wales did not say anything. This envelope contained $20,000 in $100 bills.

An additional $8,000 was found in an envelope in Wales's toiletry kit. Another customs inspector then explained to Wales that if he carried more than $10,000 in currency, he would have to fill out a form known as the currency transaction and reporting form. Wales did not ask to fill out the form. He was then led to a room where he was to be searched. On the way he was asked if he had any more money with him. He did not respond audibly, but reached into his breast pocket and handed the customs officer another envelope. This envelope was similar to the two found in his luggage, and like the others it contained $100 bills which had been bound by money wrappers. The currency in this envelope totalled $20,000.

Viewing the evidence in the light most favorable to the government, a reasonable jury could have found that Wales knew he was bringing more than $10,000 in U.S. currency into this country and knowingly and willfully stated on his customs declaration form that he was not. *See United States v. Carrier*, 654 F.2d 559, 561 (9th Cir.1981) (defendant's oral "no" response and his continued reluctance to let inspectors know that he was carrying over $5,000 in his briefcase supported trial court's con-

clusion that he acted knowingly and willfully).

### B. Evidentiary Contentions

We will reverse a district court's evidentiary rulings only for abuse of discretion. *United States v. Conners*, 825 F.2d 1384, 1390 (9th Cir.1987).

#### 1. False Drivers' Licenses

Wales argues the district court erred in permitting a government witness to testify that at the time of Wales's arrest he had in his suitcase an expired California driver's license issued in the name of "Larry David Abbott" with his picture on it, and a Canadian driver's license issued in the name "Robert Sanders."

As the district court found, Wales's counsel opened the door to this testimony about the false drivers' licenses when he elicited testimony on cross-examination that various documents which Wales was carrying on his person and which were in his briefcase at the time of his arrest were "all legitimate" and in Wales's name. *See United States v. Segall*, 833 F.2d 144, 148 (9th Cir.1987) (defense counsel "opened the door" to redirect testimony that only $2,000 remained in defendant's bank account on May 12, 1986, by introducing cross-examination evidence creating a false impression that defendant retained in her bank account funds under investigation until June 9, 1986). The district court did not err in admitting this evidence.

#### 2. Gold Coins in Safe Deposit Box

The government presented evidence that between five and seven days after his arrest, Wales falsely told a bank officer that the key to his safety deposit box had been stolen and, for this reason, he wanted the box (which it turned out contained $150,000 in gold coins) drilled open and the contents returned to his wife.[1] Wales contends the government should not have been allowed to introduce this post-arrest attempt to retrieve the contents of the safety deposit box and the fact that the box con-

tained $150,000 in gold coins. He argues this conduct bore no similarity to the charged offense. We disagree.

Under Federal Rule of Evidence 404(b), evidence of other crimes, wrongs, or acts may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *United States v. Bibo–Rodriguez*, 922 F.2d 1398, 1400 (9th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2861, 115 L.Ed.2d 1028 (1991). In this circuit "Rule 404(b) applies to other act evidence regardless of whether it occurred before or after the alleged offense." *United States v. Harrison–Philpot*, 971 F.2d 234, 241 n. 5 (9th Cir.1992).

Wales's deceitful attempt to clean out his safe deposit box before the government could examine its contents was clearly an attempt to conceal the $150,000 in gold coins. This evidence was consistent with the government's theory of the case that Wales had a motive for submitting a false customs declaration: to conceal his assets and to avoid an explanation of their source. The use of this evidence to prove motive was proper. *See United States v. Miller*, 874 F.2d 1255, 1269 (9th Cir.1989); *United States v. Bailleaux*, 685 F.2d 1105, 1110 n. 1 (9th Cir.1982).

#### 3. The Correctly Completed Declaration Form

Wales argues it was error to allow a customs inspector to testify that, in contrast to most travelers who needed assistance with the customs declaration form, he handed in a fully completed form with no apparent errors. Because Wales did not object to this evidence at trial, we review for plain error. *United States v. Kessi*, 868 F.2d 1097, 1102 (9th Cir.1989).

This evidence was relevant to the government's theory that Wales was a relatively experienced traveler who possessed an above-average ability to fully complete a customs form and was thus not likely to mistakenly check the wrong box pertaining

---

1. The government learned of Wales's attempt to have the box drilled, obtained a search warrant, opened the box and discovered the $150,000 in gold coins.

to the amount of currency he was carrying. The district court did not err in admitting this evidence.

### 4. Wales's Behavior

■ Wales argues the district court erred by permitting a government witness, on redirect examination, to testify that most travelers who are told that they checked the wrong box regarding possession of currency act quickly to correct the error and present their money. We reject this argument.

During cross-examination of the witness, Wales's counsel elicited testimony to the effect that most people arriving in the early morning after traveling long distances appear confused. By this line of inquiry he attempted to portray Wales as a typical weary traveler. In doing so, he opened the door to permit the government, on redirect, to show that Wales's behavior and reactions differed from the typical early-morning passenger. *See United States v. Beltran–Rios*, 878 F.2d 1208, 1211–1213 (9th Cir.1989) (drug courier profile testimony admissible because defense counsel attempted to raise an inference that defendant was not a drug courier by showing that his life-style was inconsistent with that line of business).

### 5. Purpose of Customs Forms

■ Wales argues the district court erroneously allowed customs agent John Borges to testify that answers given by travelers on currency transaction and reporting forms permit the government to track people who enter or leave the United States with more than $10,000 in U.S. or foreign currency to detect any pattern of such activity.

This testimony was admissible to establish the materiality of Wales's false answer to the currency statement on the customs declaration form. Section 1001 only prohibits "material" misstatements. 18 U.S.C. § 1001; *United States v. Oren*, 893 F.2d 1057, 1063 (9th Cir.1990).

### C. Amended Guideline

■ Wales was sentenced on September 23, 1991. At that time U.S.S.G. § 2S1.3(a)(1)(B) provided for a base offense level of 13 when a defendant "made false statements to conceal or disguise the evasion of reporting requirements." Amendment 379, which took effect on November 1, 1991, modified section 2S1.3 and created a new section for offenses involving the failure to file currency and monetary instrument reports.[2] *See* U.S.S.G. § 2S1.4 (Nov.1991). Section 2S1.4 provides a base offense level of 9 for violations of section 1001. Wales urges us to vacate his sentence and remand for resentencing under section 2S1.4 as the Fifth Circuit did in a similar case, *United States v. Park*, 951 F.2d 634 (5th Cir.1992).

Section 1B1.10(a) provides that "[w]here a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of [a specifically referenced] amendment ..., a reduction in the defendant's term of imprisonment may be considered." U.S.S.G. § 1B1.10(a), p.s. (Nov.1991). The amendment to section 2S1.3(a)(1)(B) is one of the amendments to which section 1B1.10(a) applies. *See* U.S.S.G. § 1B1.10(d), p.s. (Nov.1991). Thus, "while [Wales] is not necessarily entitled to a reduction in the offense level—section 1B1.10(a) does not mandate the use of the lesser enhancement, but merely affords the sentencing court discretion to uti-

2. The official commentary to amendment 379 explains:

[T]his amendment creates an additional offense guideline (§ 2S1.4) for offenses involving Currency and Monetary Instrument Reports (CMIR). Currently, such offenses are covered by § 2S1.3, which deals with all currency transaction reporting requirements. CMIR violations are committed by individuals who, when entering or leaving the country, knowingly conceal $10,000 or more in cash or bearer instruments on their persons or in their personal effects and knowingly fail to file the report required by the U.S. Customs Service. Such criminal conduct is sufficiently different from the other offenses covered by § 2S1.3 to merit treatment in a separate guideline.

U.S.S.G.App. C, amendment 379 (1991).

lize it—he is entitled to have his sentence reviewed in light of the amendment." *United States v. Connell*, 960 F.2d 191, 197 (1st Cir.1992).

We do not vacate Wales's sentence. *But see Park*, 951 F.2d at 636. Instead, consistent with *Connell*, 960 F.2d at 197, we remand to the district court so that it may determine whether or not to adjust Wales's sentence in light of the November 1, 1991 amendment to section 2S1.3.[3]

AFFIRMED and REMANDED.

KOZINSKI, Circuit Judge, concurring in part and concurring in the judgment:

Chief Judge Henry J. Friendly was a major critic of the Federal Rules of Evidence. "Evidence," he maintained, "is not the kind of subject that lends itself to codification." Under the pre-Rules common-law system, Judge Friendly argued, "if the appellate court believe[d] the result was just and there were no other errors, it [would] 'find a way' to sustain the trial judge. It will be immeasurably harder for an appellate court to reach such sensible results if the trial court has violated a black letter rule prescribed by the Supreme Court under authority from the Congress...."[1]

Judge Friendly needn't have worried. Appellate courts, district judges and the bar haven't been buffaloed by "black letter rule[s] prescribed by the Supreme Court under authority from the Congress." One need spend only a short time in our federal courtrooms to realize that a lively common law tradition continues to flourish in matters of evidence.[2]

This is a case in point. The government wanted to prove Wales was carrying two false driver's licenses. The only possible purpose for this was to show Wales's criminal propensities, something the character evidence rule forbids. *See* Fed.R.Evid. 404(b). The district judge at first excluded the licenses, but changed his mind after Wales introduced evidence that his passport and other documents were legitimate. By pointing to his legitimate documents, the judge ruled, Wales had "opened the door" to the fake ones. The majority agrees.

This "opening the door" doctrine has a certain common-sense appeal, but where is it to be found in the Rules of Evidence? I'm aware of no authority for admitting inadmissible evidence just because we think turnabout is fair play. Perhaps it would be sensible to let the licenses in, but lots of violations of the Rules seem equally sensible. It may seem sensible to admit hearsay whenever the declarant is unavailable at trial.[3] *But see* Fed.R.Evid. 802. It may seem sensible to let witnesses be impeached with evidence of their past lies.

**3.** Ordinarily a defendant must petition the district court for modification of his sentence under section 1B1.10. *See* 18 U.S.C. § 3582(c)(2). Because Wales raised the sentencing issue on appeal, we see no need to force him to take this additional step. *See Connell*, 960 F.2d at 197 n. 10.

**1.** Hearings Before the Special Subcomm. on Reform of Federal Criminal Laws of the Comm. on the Judiciary, House of Representatives, 93rd Cong., 1st Sess., at 262–63.

**2.** The federal courts aren't alone in this respect; there seems to be something inherent in evidence law that stubbornly resists codification. *See, e.g.,* Frederick C. Moss, *Beyond the Fringe: Apocryphal Rules of Evidence in Texas*, 43 Baylor L.Rev. 701 (1991):

Beyond the fringe of the rules of evidence lies a dim region of trial practice where lawyers and judges toil in the shadows of the written rules. It is a world where the admission of evidence is sometimes governed by folk rules passed down from generation to generation of litigators. When litigators become trial judges, the bench, too, embraces these evidentiary customs. And when litigators and judges ascend to the court of appeals, occasionally these folk rules become enshrined in appellate opinions.

... [S]ome informal evidence rules have only a shaky footing in the legitimate evidence law of the codes and cases. Others have none at all. Yet, they thrive with daily usage. Many are the illegitimate offspring of genuine evidentiary principles that trial practitioners and judges have distorted so regularly that the distortions have independent lives. Others are completely spurious, the product of blind, unthinking acceptance of apocryphal evidentiary doctrines and rules of thumb.

*Id.* at 702–03; *see also* Victor J. Gold, *Do the Federal Rules of Evidence Matter?*, 25 Loy. L.A.L.Rev. 909 (1992).

**3.** *See* Model Code of Evidence Rule 503(a) (1942) (making this proposal).

*But see* Fed.R.Evid. 608(b). It may seem sensible to allow defendants to prove their good character using specific acts. *But see* Fed.R.Evid. 405. But rules are rules. The basic policy judgments were made by their drafters; when we rely on common sense in admitting evidence contrary to the Rules, we're simply substituting our own judgments for theirs.

In fact, the drafters considered the very issue presented in this case—whether the prosecution may introduce evidence of a defendant's bad character once the defendant has introduced evidence of his good character. Rules 404(a)(1) and 405 allow such bad character evidence, but *only in the form of reputation or opinion,* not specific instances of conduct.[4] The majority opinion directly contravenes this specific judgment.[5]

Even had we the authority to substitute our judgment for that of the drafters, this is surely not the way to do it. Look at just how little guidance the majority's "opening the door" doctrine gives to judges and litigants. What evidence will open a door? How wide will the door open? If a defense lawyer calls his client a "law-abiding citizen," does he invite evidence of every crime the defendant has committed? If Wales's legitimate documents opened the door to otherwise inadmissible character evidence, would they have opened the door to inadmissible hearsay? Inadmissible opinion?

A lawyer anxious to keep out damaging information needs to know what subjects to sidestep in order to keep it out. A district judge deciding evidentiary questions needs to know what he may admit and what he must exclude. The majority's opinion offers no assistance in answering these questions. Not only does it fail to announce a clear rule, it provides no basis for extrapolating a rule by analogy: Both the opinion here and *United States v. Segall,* 833 F.2d 144 (9th Cir.1987), on which it relies, fail to even mention the objection interposed to admission of the evidence. Can we infer that "opening the door" will sweep out of the way any and all rule-based evidentiary objections?

I'm unwilling to join my colleagues in their leap into the unknown reaches beyond the Federal Rules of Evidence. I conclude therefore that the district court should have kept the licenses out, as the Rules mandated. The district court's mistake, however, wasn't fatal. The evidence against Wales was so substantial that the admission of the licenses was harmless. Wales just didn't behave like someone who had made an honest mistake. He declared $40 worth of purchases but somehow forgot the $48,000 in cash, even when the inspector asked how much money he was carrying. After the inspector found one packet of undeclared money, Wales said nothing. It was only after the inspector found a second packet that Wales finally owned up to the truth. Wales's subsequent attempt to hide the gold coins helped show a motive for lying on the declaration. Faced with all this, any jury would certainly have convicted Wales even without the fake licenses.

Because the error was harmless, I concur in the majority's result on this point. *See Kotteakos v. United States,* 328 U.S. 750, 764–65, 66 S.Ct. 1239, 1247–48, 90 L.Ed. 1557 (1946) (error harmless if court can say with "fair assurance" that error had no "substantial influence" on the verdict);

---

**4.** The two situations in which Rule 405 allows evidence of specific instances of conduct—when cross-examining a witness who's given reputation or opinion evidence, and when the defendant's character is actually an element of the offense—don't apply here.

**5.** I realize there's Ninth Circuit case law that talks of "opening the door," but all these cases involve applications of "opening the door" doctrines present in the Rules themselves. For instance, *United States v. Segall,* 833 F.2d 144 (9th Cir.1987), which the majority cites, seems to apply the principle that otherwise irrelevant evidence can become relevant when other evidence is introduced. *See* Fed.R.Evid. 401, 402. The same is true of *United States v. Joetzki,* 952 F.2d 1090, 1094 (9th Cir.1991), on which the government's brief relied, and of the majority's Part B(4). Likewise, *United States v. Stuart,* 718 F.2d 931 (9th Cir.1983), also cited by the government, involved prior consistent statements, which are generally inadmissible hearsay but are made admissible by allegations of recent fabrication or improper influence or motive. *See* Fed.R.Evid. 801(d)(1).

*United States v. Webbe,* 755 F.2d 1387, 1389 (9th Cir.1985) (same). And, while I don't join Part B(1), I do join the rest of Judge Thompson's well-written opinion.