**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0762n.06
Filed: December 16, 2008

**No. 07-6008**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| MARTEDIS McPHEARSON, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: BOGGS, Chief Judge; MERRITT and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant appeals his conviction by jury on one count of possession with intent to distribute approximately 4.9 grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1), and sentence of 140 months of imprisonment. Because the district court did not abuse its discretion in denying defendant's request to admit photographs and medical records at trial; did not violate defendant's Sixth Amendment right to trial by jury when it made factual findings that increased defendant's sentence within the statutory range; and correctly refused to sentence defendant under amendment 706, as amended by amendments 711 and 715, to the United States Sentencing Guidelines Drug Quantity Table in § 2D1.1, which had not yet been enacted at the time of sentencing, we affirm

-1-

defendant's conviction and sentence, but remand to the district court to consider defendant's pending motion to reduce his sentence under the discretionary retroactive application of the amendments to amendment 706.

I.

On November 15, 2004, a grand jury in the Western District of Tennessee returned a seven-count indictment against defendant Martedis McPhearson and co-defendant Elton Nance. The indictment charged McPhearson with possession with intent to distribute approximately 0.3 grams of crack cocaine on August 16, 2003 (Count One); approximately 0.3 grams of crack cocaine on August 26, 2003 (Count Two); and approximately 0.4 grams of crack cocaine on September 2, 2003 (Count Three), all in violation of 21 U.S.C. § 841(a)(1); aiding and abetting, together with Nance, of possession with intent to distribute approximately 4.9 grams of crack cocaine on December 12, 2003, in violation of 21 U.S.C. §§ 841(a)(1) and (2) (Count Four); felon in possession of a firearm shipped in interstate commerce on December 12, 2003, in violation of 18 U.S.C. § 922(g) (Count Five); and aiding and abetting, together with Nance, of possession of a firearm in furtherance of a drug trafficking crime on December 12, 2003, in violation of 18 U.S.C. §§ 924(c)(1)(2) and 2 (Count Seven).

McPhearson was tried by jury on March 26, 2007. At trial, Investigator Wes Stilwell of the Jackson Police Department, Metro Narcotics Unit, testified that he received a tip from an informant, Terry Wayne Curry, that an individual had been selling crack cocaine at McPhearson's residence. Stilwell conducted surveillance and observed foot traffic to and from the home. Stilwell paid Curry

to conduct three controlled buys of small quantities of crack cocaine from the residence in August and September 2003. Curry, through his testimony, verified that he made three controlled purchases from McPhearson. According to Stilwell, one-tenth of a gram of crack cocaine sells for approximately $10 on the street and is known as a "dime bag."

Charles Mathis of the Jackson Police Department's Gang Unit testified that he and his partner, Christopher Wiser, went to McPhearson's home on December 12, 2003, to serve an arrest warrant on McPhearson. McPhearson answered the door, and Mathis arrested him. According to Mathis, Wiser found a "plastic baggie of crack" in McPhearson's pocket.

Wiser verified that he assisted in McPhearson's arrest on December 12, 2003. He also confirmed that he searched McPhearson and found "a clear plastic baggie with what appeared to be crack cocaine in his right front pocket."

Jessica Marquez of the Tennessee Bureau of Investigation ("TBI") testified as an expert witness in the field of forensic chemistry and the identification of controlled substances. According to Marquez, the three substances from the controlled buys consisted of 0.3 grams, 0.3 grams, and 0.4 grams of crack cocaine. Brian Eaton, a former special agent/forensic scientist with the TBI, testified as an expert witness in the field of forensic chemistry. According to Eaton, the substance submitted by Mathis after McPhearson's arrest in December 2003 consisted of 4.9 grams of crack cocaine.

On rebuttal, Stilwell testified that small, plastic zip-lock bags are typically used to package and resell small quantities of controlled substances, such as cocaine and marijuana. Wiser also testified on rebuttal that he found small plastic bags that are commonly used to package narcotics

in more than one location during his search of McPhearson's residence in December 2003. He also found metal scales and digital scales, of the type used to weigh small quantities of drugs.

Lieutenant Patrick Willis of the Jackson Police Department testified that McPhearson, in a statement taken after police searched his house in December 2003, stated: "The officers went in my right front pocket and found crack cocaine. I had bought $100 worth of crack cocaine earlier this morning." On rebuttal, Stilwell had testified that nowhere, at that particular time, could an individual in Madison County, Tennessee, purchase 4.9 grams of crack cocaine for $100. Willis also testified that he participated in the search of McPhearson's living room in December 2003, that he observed small zip-lock bags located inside a black shaving bag, and that the bags are "commonly used to sell small quantities of crack cocaine."

McPhearson testified in his defense. He conceded that the 4.9 grams of crack cocaine charged in Count Four was found in his pocket in December 2003 and belonged to him. According to McPhearson, however, he did not intend to sell it; rather, the crack cocaine was for "personal use," specifically, to alleviate the pain associated with injuries he sustained from an automobile accident on December 12, 2002, one year prior to his arrest date. McPhearson explained that during the accident, he:

> went through the windshield and hit the middle of the street, breaking both my legs, both my arms, my collarbone, my pelvic bone, my tailbone, my rears. My right foot was crushed. My liver and spleen was bleeding. My lungs was collapsed. And I also had damage to my liver.

He stated that because of his injuries, he received treatment at two nursing homes until mid-April 2003. According to McPhearson, he treated his pain with both legal and illegal drugs, including cocaine and marijuana. At the time of trial, McPhearson stated that he was "still . . . in pain a lot."

McPhearson's mother, Mary Collier, substantiated McPhearson's testimony relating to the automobile accident. She explained on direct examination that:

> [h]e was broken up. Everything was broken. Every bone was broke in his body except his neck and his back. And he had both legs broke. Pelvis bone broke. His butt area was broke. His spleen was broke. His liver was broke. And his ankles was crushed into powders. And his wrist was broke. And like I said, mostly everything was broke except his – And they had him on a life support machine.

> * * *

> They – they had wrote him off to be dead. And I had talked to the doctors, and they said they had kept him sedated, drugged up, because they knew he was in pain because he was – he was so swollen until he looked like he was pregnant. His stomach was just sticking out.

When McPhearson left the nursing home,

> [h]e was still in a wheelchair. We had to take him most of the time where he wanted to go. And he mostly was in a wheelchair.

> And then he got up and started walking with a cane, and he was – he was – still couldn't hardly get around because he was – he got a big lump up under his heel part where they couldn't put the bones back together. It's just powders. They're chipped up into like powder, like, and they couldn't put it back together.

When defense counsel sought to admit photographs of McPhearson that were allegedly taken a week or two after the accident, the government objected on relevance grounds. In support of its request to admit the photographs, defense counsel stated at side bar:

-5-

the thing that makes [the photographs] relevant is if he suffered that much of a catastrophic injury back in December or January, whenever those pictures were taken, he clearly would still be in pain, according to his testimony, two, six or even – even today he says he's still having trouble.

The district judge responded: "But you can't tell that from these pictures. All this shows is a large man in a hospital bed, and that's really about it. It doesn't prove what you want it to prove." Accordingly, the judge sustained the objection but permitted defense counsel to make an offer of proof. Defense counsel then stated that: "These are pictures of Mr. McPhearson. I want to state that for the record." The judge clarified: "Pictures of what Mr. Brown [defense counsel] describes is Mr. McPhearson." Defense counsel then stated: "Well, Your Honor, without an offer of proof, I would like to have the defendant come up and identify that that's him" to which the judge responded: "All right."

Collier then resumed her testimony, stating that McPhearson's physical abilities were more limited in December 2003, a year after the accident, than they were at the time of the trial in 2007, and that in 2003 he traveled by walker, wheelchair, and then cane to catch a bus to therapy. She also agreed that McPhearson was "a person who was in pain."

After the government cross-examined Collier, defense counsel requested that the medical records associated with McPhearson's accident be admitted. The judge denied the request but again allowed defense counsel to make an offer of proof. Upon defense counsel's request, the judge permitted counsel to "file [the medical records] as an exhibit at the sentencing hearing, if there's to be a sentencing hearing."

The jury convicted McPhearson on Count Four, aiding and abetting, together with Nance, of possession with intent to distribute approximately 4.9 grams of crack cocaine on December 12, 2003, in violation of 21 U.S.C. §§ 841(a)(1) and (2). Because the jury could not reach a verdict on Counts One, Two, and Three, charging defendant with possession with intent to distribute 0.3 grams, 0.3 grams, and 0.4 grams of crack cocaine, respectively, the district court declared a mistrial as to those counts and dismissed them upon the government's motion.[1]

The United States Probation Office prepared a presentence investigation report ("PSI"). Paragraph 5 of the PSI set forth the facts surrounding co-defendant Nance, a firearm, and marijuana found during the December 12, 2003, execution of the search warrant at McPhearson's home:

> 5.  During the warrant search, officers found a small, locked safe in a middle bedroom of the residence. When asked by one of the officers if he knew which of the several keys they had found might go to the safe, Mr. Nance responded by correctly identifying the key which ultimately unlocked the safe. Inside the safe, officers found a firearm, identified as a Husqvarna, .380 caliber semiautomatic pistol, serial #68986. The weapon was loaded with four (4) .380 caliber cartridges in the magazine. An additional six (6) .380 caliber cartridges were found in the living room of the residence. A small amount of marijuana (21.9 grams) was also found in the home. Subsequent to his arrest, Mr. Nance, after being Mirandized, voluntarily gave a signed and witnessed statement to JPD Lt. Patrick Willis and former JPD Officer A. Willis. In his statement, Mr. Nance admitted that, on the Monday prior to his arrest, he was at Martedis McPhearson's residence when there was a knock at the door. According to the defendant's statement, a female who was also in the home asked Mr. Nance to "put up" a black automatic weapon (the same weapon found by officers during the warrant search) before she answered the door. Mr. Nance responded by picking up the firearm, at which time he discovered that the safety was not engaged. When he reportedly tried to engage the safety, the magazine fell out of the weapon, with two (2) bullets falling out of the magazine. After placing the

---

[1]The court did not instruct the jury to return a verdict on the firearm charges in Counts Five and Seven, and those counts were dismissed at sentencing upon the government's motion.

bullets back into the magazine and the magazine back into the weapon, Mr. Nance reportedly placed the firearm into the "box" (safe). Defendant Nance admitted that his fingerprints would be on that firearm. Mr. Nance specifically denied any knowledge of the marijuana which was found in the residence. He also denied any involvement in crack cocaine trafficking and any knowledge of such activity by Mr. McPhearson.[2]

In the PSI, the probation officer calculated McPhearson's sentence under the 2006 United States Sentencing Guidelines and attributed to him the 0.3, 0.3, and 0.4 grams of crack cocaine resulting from the three buys charged in Counts One, Two, and Three but that were dismissed upon the government's motion following a mistrial; the 21.9 grams of marijuana found at the residence; and the firearm found at the residence.

At the sentencing hearing, the district judge determined, over McPhearson's objections, that he should apply the Sentencing Guidelines in effect at the time of sentencing, rather than continue

---

[2]On April 6, 2007, we affirmed Nance's conviction by jury of being a felon in possession of a firearm and sentence, based on the events of December 12, 2003. *United States v. Nance*, 481 F.3d 882 (6th Cir. 2007). In *Nance*, we stated:

Terry Wayne Curry . . . testified that he had seen Nance open the same safe using a key on a prior occasion. Curry also testified that he had seen a firearm at the residence on a prior occasion that was similar to the one recovered from the safe. Lieutenant Willis also testified that, after Nance was arrested, he provided a statement to the police in which he admitted handling the firearm in question. Nance stated that four days prior to his December 12 arrest he had been asked to put the gun away by Nicole Parker, who was at the house, and that he did so because children were sometimes at the house. Nance explained in his statement that his fingerprints would therefore be found on the gun and the safe because of his handling of it four days prior. Nicole Parker testified that she had never handled the firearm nor asked Nance to put the firearm away.

*Id*. at 884-85.

the sentencing or apply the expected, but yet-to-be-enacted, "crack cocaine amendment," Amendment 706, as amended by amendments 711 and 715, to the United States Sentencing Guidelines Drug Quantity Table, U.S.S.G. § 2D1.1(c)(1)-(14); that the 0.3, 0.3, and 0.4 grams of crack cocaine resulting from the three buys by the confidential informant should be attributed to McPhearson; and that a two-level enhancement for possession of a firearm during a drug trafficking crime was proper.

Regarding McPhearson's objection to the court's application of the current Sentencing Guidelines, the judge stated:

> The defendant impliedly asks me to apply the guidelines as they will be, perhaps, in November. Alternatively, if I don't want to do that, the defendant sort of impliedly asked that I postpone this hearing until after the target date for the guidelines amendments to see what happens.
>
> As a matter of policy, this court has decided to apply the guidelines that are in effect. There's two reasons for that. There are two reasons for that. Number one, we don't know that the guidelines will be amended. Now, it's true that the Congress has rarely rejected guidelines proposed amendments, but I can't presume Congressional action three months from now, and I don't want to do that.
>
> There's another reason, and that is that if a proposed guideline is offered, will the court have to then postpone all sentencings that might be affected by that guideline until after the Congress has acted on it? And if that's true, then we'll probably only have sentencings once a year. If a guideline amendment is proposed, we'll say, in December, will the court have to wait until, say, the following November to sentence defendants whose guidelines may be amended?
>
> In addition, there's no assurance that the guidelines will be retroactive, even though I think that language probably is – if the guidelines passes, that probably will pass, too.
>
> But I can't make those presumptions, so I decline to accept the guideline proposal, and I'm going to use the guidelines that are in existence today.

As to the firearm enhancement, the judge explained:

> The court has to keep in mind that this is a guideline application of a firearm enhancement. This is not a conviction for use of a firearm during and in furtherance of a drug-trafficking crime, and the rules are different. It's likely true that there was no evidence that this defendant used this firearm in furtherance of a drug-trafficking crime, but that's not the issue before the court today.
>
> If a firearm was possessed during the drug crime, the court is to add two levels unless the defendant shows that it was clearly improbable that the firearm was in furtherance of the drug-trafficking crime. So I have a different standard than did the government to show beyond a reasonable doubt that the defendant used the firearm in furtherance of a drug-trafficking crime.
>
> Count 4, the count of which the defendant is convicted, charges him and Mr. Nance with aiding and abetting each other in the possession of this 4.9 grams of crack cocaine with intent to distribute. Even though Mr. Nance may have put the gun in the box, even though Mr. Nance may have been the only one with the key to the box, the guideline seems to indicate that if the firearm was possessed, not necessarily by this defendant but by an aider and abettor or a codefendant, then the firearm enhancement is to be applied unless the court finds that it's clearly improbable that the firearm could have been used or was used in furtherance of the drug-trafficking crime.
>
> Since it is possible, perhaps likely, that if someone had tried to steal the drugs of Mr. McPhearson and Mr. Nance or had tried to steal the money of Mr. McPhearson and Mr. Nance, that Mr. Nance could have obtained easy access to that firearm since it was in close proximity to the drugs, that it is not clearly unlikely that this firearm was related to the possession of drugs with intent to distribute. So the court finds that the firearm enhancement is properly applied.

The court sustained McPhearson's objection that he should not be held responsible for the

21.9 grams of marijuana, explaining:

> There's no need for me to even rule on the marijuana that was found in the box because it is such a relatively small amount that it doesn't affect the guidelines, in any event. 21.9 grams is less than an ounce of marijuana. And compared to 5.9

grams of crack cocaine, it gets lost in the classification. So I'm not going to rule on the marijuana. I'm not going to consider the marijuana.

So I guess I am, in effect, Mr. Brown [defense counsel], granting your objection to including the marijuana because I'm not going to consider it.

We still have 118 kilograms of marijuana equivalence from the 5.9 grams of crack cocaine.

The court concluded that the probation officer had correctly calculated the Guideline range. It then considered the sentencing factors set forth in 18 U.S.C. § 3553, after hearing from defense counsel and McPhearson. The court sentenced defendant to 140 months of imprisonment, followed by a three-year term of supervised release. McPhearson timely appealed.

On April 23, 2008, while the appeal was pending, McPhearson filed a motion to reduce his sentence under the crack cocaine amendment, pursuant to 18 U.S.C. § 3582(c). On October 6, 2008, the district court entered an order holding the motion in abeyance for lack of jurisdiction until resolution of this appeal.

## II.

McPhearson first contends that the district court denied him an adequate defense when it refused his request to admit medical records and photographs relating to his automobile accident. McPhearson asserts that the records and photographs supported his theory that he had no intent to distribute crack cocaine; rather, he suffered extensive injuries from the automobile accident and used the crack cocaine to medicate the pain resulting from those injuries. McPhearson's contention is without merit.

A district court's evidentiary rulings are reviewed for abuse of discretion. *United States v. Blackwell*, 459 F.3d 739, 752 (6th Cir. 2006). "[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Id*. (internal citations and quotations omitted). However, "the Constitution permits judges to exclude evidence that is repetitive . . . only marginally relevant or poses an undue risk of . . . confusion of the issues." *Id*. at 753 (citation omitted). Further, "even where a district court erroneously excludes defense evidence, whether the exclusion of [evidence] violated [defendant's] right to present a defense depends upon whether the omitted evidence[,] [evaluated in the context of the entire record] [,] creates a reasonable doubt that did not otherwise exist." *Id*. (citation omitted). *See also United States v. Miller*, 115 F.3d 361, 365 (6th Cir. 1997) ("[E]ven if the trial court had excluded additional relevant defense evidence which was more probative than prejudicial, no reversible error would have resulted because, on the overall instant record, no reasonable doubt exists about [defendant's] guilt.") (citing *United States v. Agurs*, 427 U.S. 97, 112-13 (1976) and FED. R. EVID. 103(a)).

As a threshold matter, we note that McPhearson did not provide the photographs or medical records to this court. Upon inquiry to the district court, we obtained the photographs, but the district court has no medical records.

Further, although the district court expressly permitted McPhearson's counsel to authenticate the photographs at trial, no testimony in the partial transcripts provided to us confirms that the photographs (or medical records) were ever authenticated. We obtained the full trial and sentencing transcripts, and nowhere in the transcripts did defense counsel attempt to authenticate the

photographs or the medical records. Evidence must be authenticated prior to admission. *Hartley v. St. Paul Fire & Marine Ins. Co.*, 118 F. App'x 914, 921 (6th Cir. 2004) (holding that "[t]he district court was within its discretion when it refused to accept the unauthenticated photographs into evidence as authentication is a necessary precondition to admissibility.") (citing FED. R. EVID. 901 and *United States v. Blackwell*, 694 F.2d 1325, 1329-30 (D.C. Cir. 1982)).

Notwithstanding these fundamental errors by defendant, we also conclude that the district court did not abuse its discretion in excluding the photographs and, accordingly, did not deny McPhearson the right to present a meaningful defense. Federal Rule of Evidence 402 permits the introduction only of relevant evidence. Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The photographs allegedly taken of McPhearson in the hospital in December 2002 could tend to make it more probable that McPhearson had incurred recent, substantial injury at the time the photographs were taken. However, that fact is not contested – both parties agree that McPhearson was involved in an automobile accident in December 2002. The government did not dispute that contention at trial. Rather, McPhearson sought to admit the photographs to demonstrate that he suffered *pain* at the time he committed the alleged criminal acts. The photographs are not relevant for that purpose. A jury cannot reasonably conclude, from a *visual* of "a large man in a hospital bed," not to mention a visual taken in December 2002, that McPhearson *experienced* pain in December 2003.

Similarly, although the medical records might document McPhearson's treatment relating to the automobile accident (even though the contents and dates of the records are unknown because McPhearson has not provided them on appeal), it cannot be assumed, as with the photographs, that the records provide evidence that McPhearson experienced pain in December 2003.

Defendant's evidence to establish pain was precisely the evidence that the district court admitted at trial – testimony by McPhearson and his mother. Both McPhearson and his mother testified about the extent of McPhearson's injuries and the pain that he suffered as a result of the automobile accident. The district court thus did not foreclose McPhearson from presenting testimonial evidence of the theory on which his defense relied.

Notably, McPhearson failed to present any evidence to the jury about the medicinal effect, if any, that crack cocaine would have on his pain. Nor did he attempt to call, as witnesses, treating physicians, or any physician for that matter, who might have provided competent medical testimony about the pain McPhearson allegedly experienced in December 2003. In essence, the jury simply chose not to believe that the crack cocaine McPhearson admittedly possessed in December 2003 was intended to alleviate his pain.

Finally, even if the district court erroneously excluded the photographs and medical records, it did not violate McPhearson's right to present a defense because, based on the overall record, no reasonable doubt exists about McPhearson's guilt. *See Miller*, 115 F.3d at 365.

The evidence of guilt was overwhelming. An informant and law enforcement officer testified that McPhearson sold crack cocaine to the informant three times in August and September 2003.

The officer had previously observed foot traffic to and from McPhearson's residence where the sales were made. When arrested, McPhearson possessed 4.9 grams of crack cocaine. McPhearson admitted that the 4.9 grams of crack cocaine belonged to him. According to testimony, 4.9 grams could be an amount possessed for distribution. Plastic bags of the kind used to distribute small quantities of controlled substances were found at McPhearson's residence. Scales of the type used to weigh small quantities of controlled substances for distribution were also found. A tenth of a gram of crack cocaine can be sold for $10 on the street. Contrary to McPhearson's statement to officers that he purchased the 4.9 grams of crack cocaine for $100, there was testimony that 4.9 grams of crack cocaine could not be purchased for $100. Thus, even if the district court erroneously excluded the photographs and medical records, we conclude that the error is not reversible.

III.

Next, McPhearson contends that the district court's sentence was procedurally unreasonable because the district court made "factual determinations that were not passed on by the jury." Specifically, McPhearson contends that in calculating the Guideline range, the district court improperly attributed to him (1) the three quantities of crack cocaine charged in Counts One, Two, and Three that were dismissed upon the government's motion following mistrial; (2) the firearm found at his residence; and (3) 21.9 grams of marijuana.

McPhearson's contention that the district court erroneously attributed 21.9 grams of marijuana to him in calculating his sentence is baseless. In fact, the court *sustained* McPhearson's objection at the sentencing hearing and did not consider the marijuana when calculating the sentence.

As to the remaining factual findings, McPhearson does not contend on appeal that the district court lacked sufficient evidence to support its factual findings; rather, he makes a *legal* argument that this Circuit's case law, although "against him on this point," is "predicated upon an incorrect view of the Sixth Amendment and argues in good faith for a change in this Circuit's law." Specifically, McPhearson suggests that a district court is not permitted to make factual findings which increase a sentence's severity because to do so violates the Sixth Amendment right to jury trial.

McPhearson cites no authority, nor does he make any novel arguments, that would cause us to overturn our prior decisions rejecting identical arguments that all factual findings affecting a sentence's severity must be made by a jury beyond a reasonable doubt. *See United States v. Sexton*, 512 F.3d 326 (6th Cir. 2008), *rehearing en banc denied*, 2008 U.S. App. LEXIS 12162 (6th Cir. May 13, 2008), *cert. denied sub nom. Romans v. United States*, 129 S. Ct. 304 (2008). In *Sexton*, we held that "[s]ince defendants were sentenced under an advisory Guidelines scheme, the maximum statutory penalty that the district court could impose was determined by the statute of conviction, rather than by a Guidelines range calculated using only jury findings." *Id*. at 330. We explained that:

> [t]his court has squarely rejected defendants' contention that *Booker* and *Blakely v. Washington*, 542 U.S. 296 (2004), require all factual findings affecting a sentence's severity to be made by a jury beyond a reasonable doubt. In *United States v. Cook*, 453 F.3d 775, 777 (6th Cir. 2006), this court explained that "[*Booker*] has no bearing on advisory guideline calculations," but, instead, applies only to judicially found facts used "to impose a mandatory enhancement." Where, as here, a district court understands that the Guidelines are only advisory, judicial fact-finding done by the preponderance of the evidence is permissible. As we stated in *United States v. Mickens*, 453 F.3d 668, 673 (6th Cir. 2006) (collecting cases), "[b]y now, it is well established that the preponderance standard does not violate *Booker*, so long as the

trial court appreciates that the guidelines are advisory, not binding." *See also United States v. Stone*, 432 F.3d 651, 654-55 (6th Cir. 2005) ("*Booker* did not eliminate judicial fact-finding"). Moreover, nothing in the Supreme Court's recent ruling in *Rita v. United States*, 127 S. Ct. 2456 (2007), changes our understanding.

*Id*. at 329-30.

In fact, we recently vacated and remanded a sentencing decision to the district court because the court had refused to *consider* imposing a firearm enhancement simply because "the jury was asked to find nothing about that." *United States v. Driver*, 535 F.3d 424, 434 (6th Cir. 2008). In remanding the sentence in *Driver*, we instructed the district court to reconsider application of the two-level enhancement for possession of a dangerous weapon because testimony was sufficient for the court to determine, by a preponderance of the evidence, that Driver possessed a dangerous weapon while engaged in a drug conspiracy and because "[t]he district court's reason for not applying the enhancement – that there was no jury finding that Driver possessed a dangerous weapon – has since been discredited by the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), and subsequent decisions of this court." *Driver*, 535 F.3d at 434 (citing *Sexton*, 512 F.3d at 329-30). *See also Harris v. United States*, 536 U.S. 545, 567 (2002) (holding that juries need only determine the "outer limits" of a sentence, leaving the court free to make factual determinations that increase the sentence within the jury-authorized range); *United States v. Thompson*, 515 F.3d 556, 565 (6th Cir. 2008) (collecting citations showing *Harris*'s continuing viability); *United States v. Love*, No. 06-1581, 2008 U.S. App. LEXIS 17365, *3-*6 (6th Cir. Aug. 12, 2008) (unpublished) (rejecting defendant's contention that the Sixth Amendment, as interpreted by *Apprendi v. New*

*Jersey*, 530 U.S. 466 (2000), forbade sentencing court from finding drug quantities that the jury had not designated by special verdict).

Here, the district court sentenced McPhearson to 140 months of imprisonment under an advisory Guidelines scheme. The maximum statutory penalty that the district court could have imposed based on McPhearson's conviction for distributing 4.9 grams of crack cocaine was 20 years of imprisonment, or 240 months. 21 U.S.C. § 841(b)(1)(C) ("In the case of a controlled substance in schedule I or II . . . such person shall be sentenced to a term of imprisonment of not more than 20 years."); § 812(b)(3) (treating crack cocaine as a Schedule II controlled substance). Because McPhearson's 140-month sentence did not exceed the 20-year maximum statutory penalty, the district court committed no error.

## IV.

Finally, McPhearson contends that the district court erred in failing to continue the sentencing date until November 2007 based on his expectation that Congress would, at that time, have enacted retroactive amendment 706, as amended by amendments 711 and 715, to the Sentencing Guidelines Drug Quantity Table in § 2D1.1 ("crack cocaine amendment"). In the alternative, he contends that the district court erred in failing to apply the amendment prospectively.

The argument is without merit. McPhearson concedes that, at the time of sentencing, the crack cocaine amendment had not yet been enacted. Therefore, it would have been improper had the district court applied the not yet enacted crack cocaine amendment at the time of sentencing. *See* 18 U.S.C. § 3553(a)(4)(A)(ii) (providing that a district court should apply the Sentencing Guidelines

"in effect on the date the defendant is sentenced."); § 3553(a)(5)(B) (providing that a district court should apply Guidelines policy statements "in effect on the date the defendant is sentenced."); U.S.S.G. § 1B1.11(a) ("The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced."). McPhearson also fails to support his contention that the district court was required, or that it would have even been appropriate, to continue a sentencing hearing based on sheer speculation about the legislature's future conduct.

Ultimately, McPhearson's request for relief is moot for purposes of this appeal. He has filed a motion in the district court requesting that his sentence be reduced based on the amendment, pursuant to 18 U.S.C. § 3582(c). On October 6, 2008, the district court entered an order holding the motion in abeyance for lack of jurisdiction pending this court's resolution of the appeal.

18 U.S.C. § 3582(c)(2) permits a district court, upon motion, to reduce a term of imprisonment "based on a sentencing range that has subsequently been lowered by the Sentencing Commission, pursuant to 28 U.S.C. § 994(o), . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." Section 1B1.10 of the Guidelines identifies the crack cocaine amendment as retroactive and articulates the proper procedure for applying the amendment to cases in which defendants have already been sentenced. Section 1B1.10 makes clear that a court may, in its discretion, reduce a sentence based on the retroactive amendments listed; that the authorization of the discretionary reduction does not entitle a defendant to a reduction as a matter of right; and that it "does not otherwise affect the lawfulness of a

previously imposed sentence." In determining whether to grant a motion for reduction of sentence

under § 3582(c), the district court must consider the § 3553(a) sentencing factors, the danger posed

to the community by reducing the defendant's term of imprisonment, and the defendant's post-

sentencing conduct. Section 1B1.10, Application Notes 1(B)(i)-(iii). Thus, the decision to grant or

deny defendant's motion requires factual findings that are more appropriately within the province

of the district court.

In *United States v. Ursery*, 109 F.3d 1129 (6th Cir. 1997), we considered whether to vacate

a sentence or remand the case to the district court because of a change in the Sentencing Guidelines

after the defendant was sentenced. *Id*. at 1137. Specifically, while the case was pending before the

Supreme Court, the Sentencing Commission adopted Amendment 516 to U.S.S.G. § 2D1.1(c) which,

instead of treating each plant of marijuana as equivalent to one kilogram, assigned a presumptive

weight of one hundred grams of marijuana to each plant. *Id*. The amendment potentially reduced

defendant's base offense level in *Ursery* from 26 to 16. *Id*. In determining how a district court

should proceed after a change in the Sentencing Guidelines, the *Ursery* court stated:

> As defendant correctly observes, he is entitled to have his case remanded to the
> district court for the opportunity to present an 18 U.S.C. § 3582(c)(2) motion for a
> reduction in sentence based on Amendment 516, which changes the equivalent
> weight of 142 plants of marijuana, and, thus, lowers the guideline range. However,
> this does not mean that the current sentence is vacated. The current sentence is not
> erroneous, because it was properly imposed based on the guidelines in effect at the
> time of sentencing. 18 U.S.C. § 3553(a)(4)(A). Moreover, a district court has the
> discretion to deny a section 3582(c)(2) motion, even if the retroactive amendment has
> lowered the guideline range. *See United States v. LaBonte*, 70 F.3d 1396, 1410-11
> (1st Cir. 1995), *cert. granted*, 518 U.S. 1016 (1996); *United States v. Coohey*, 11
> F.3d 97, 101 (8th Cir. 1993); *United States v. Wales*, 977 F.2d 1323, 1327-28 (9th
> Cir. 1992).

In dealing with a similar amendment to the LSD guideline, the court in *Coohey* stated:

> Section 1B1.10 does not mandate that Amendment 488 be applied retroactively, but instead gives the sentencing court the discretion so to apply it. Accordingly, rather than vacate Coohey's sentences, we remand the case to the District Court in order to allow that court to consider whether, in the exercise of its discretion, Amendment 488 should be applied retroactively to reduce Coohey's sentences.

11 F.3d at 101. In *Wales*, the court noted that ordinarily a defendant must first petition the district court for a sentence reduction, but if the issue is raised for the first time on appeal, the court of appeals may remand for consideration of the request. 977 F.2d at 1328 n.3. We believe the same procedure should be followed in the present case. This case must be remanded to the district court to allow defendant to make a § 3582(c)(2) motion for a reduction in sentence and to allow the district court to consider, in the exercise of its discretion, whether Amendment 516 should be applied retroactively to reduce defendant's sentence.

*Id.* at 1137-38. Based on *Ursery*, we recently held that "[w]hen an amendment like amendment 706 applies retroactively under § 1B1.10(c), the proper procedure is for this court to affirm the sentence but to remand for consideration of whether the prisoner is entitled to a sentence reduction under § 3582(c)." *United States v. Poole*, 538 F.3d 644, 646 (6th Cir. 2008) (affirming defendant's sentence but remanding for consideration of his entitlement to a sentencing reduction under § 3582(c), § 1B1.10(c), and amendment 706). Accordingly, we remand the case to the district court for consideration of McPhearson's pending motion under 18 U.S.C. § 3582(c) to reduce his sentence.

V.

For the reasons stated, we affirm defendant's conviction and sentence, but remand for consideration of McPhearson's pending motion to reduce sentence.

**MERRITT, Circuit Judge, dissenting.** For the same reasons given in my dissenting opinions in the *Sexton* and *Romans* cases relied upon by Judge Griffin's opinion in Section III, I disagree with the process of ratcheting up the guideline sentence based on judge-found facts outside the facts found by the jury verdict. The only convicted conduct in this case was the jury's verdict that the defendant possessed one-fifth of an ounce of cocaine base. This convicted offense conduct carries a sentence much less than 12 years. I would reverse the sentence and instruct the court below to impose a sentence based on offense conduct no greater than the facts established by the jury verdict.